**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

SHANE BECHLER,

           Plaintiff,

    v.

MVP GROUP INTERNATIONAL, INC., BED BATH
& BEYOND INC., WAYFAIR LLC, and JET.COM,
INC.

          Defendants.

Civil Action No.
1:16-cv-08837-LAP

**JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND FOR**
**COSTS, ATTORNEY'S FEES, AND SANCTIONS**

BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Tel. No. (315) 218-8000

*Attorneys for Defendants MVP Group International,*
*Inc., Bed Bath & Beyond Inc., and Wayfair LLC*

INGRAM YUZEK GAINEN CARROLL &
BERTOLOTTI, LLP
150 East 42nd Street, 19th Floor
New York, New York 10017
Tel. No. (212) 907-9600

*Attorneys for Defendant Jet.com, Inc.*

**Table of Contents**

**Pages**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTS ............................................................................................................................... 2

ARGUMENT ..................................................................................................................... 6

    I.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FIRST CAUSE OF ACTION ................................................ 7

    II.   DEFENDANTS ARE ENTITLED TO COSTS, ATTORNEYS' FEES AND SANCTIONS ................................................................................................ 11

CONCLUSION ................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

ALS Scan, Inc. v. RemarQ Cmtys., Inc.,
  239 F.3d 619 (4th Cir. 2001) ....................................................................10

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).....................................................................................6

Baker v. Urban Outfitters, Inc.,
  254 F. Supp. 2d 346 (S.D.N.Y. 2003)..........................................................6

Baker v. Urban Outfitters, Inc.,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006)............................................... *passim*

Bourne v. Walt Disney Co.,
  68 F.3d 621 (2d Cir. 1995)...........................................................................8

Cartoon Network LP, LLP v. CSC Holdings, Inc.,
  536 F.3d 121 (2d Cir. 2008).......................................................................10

Chambers v. Nasco, Inc.,
  501 U.S. 32 (1991).....................................................................................13

Davis v. Blige,
  505 F.3d 90 (2d Cir. 2007)...........................................................................7

Earth Flag Ltd. v. Alamo Flag Co.,
  154 F. Supp. 2d 663 (S.D.N.Y. 2001).................................................12, 14

Eliya, Inc. v. Kohl's Corp.,
  No. CV 15-2123, 2016 U.S. Dist. LEXIS 22086 (E.D.N.Y. Feb. 22, 2016)............................9

Faulkner v. Nat'l Geographic Enters.,
  409 F.3d 26 (2d Cir. 2005)..........................................................................10

Fogerty v. Fantasy, Inc.,
  510 U.S. 517 (1994)...............................................................................12, 14

Gench v. HostGator.com, LLC,
  14 Civ. 3592, 2015 U.S. Dist. LEXIS 78309 (S.D.N.Y. June 17, 2015)...................................7

Goodman v. Universal Beauty Products, Inc.,
  17 Civ. 1716 (KBF), 2018 WL 1274855 (S.D.N.Y. March 9, 2018) .......................................9

Graham v. James,
    144 F.3d 229 (2d Cir. 1998)............................................................................7, 8

Jorgensen v. Epic/Sony Records,
    351 F.3d 46 (2d Cir. 2003)...............................................................................7

Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),
    71 F.3d 996 (2d Cir. 1997)...............................................................................9

Law Debenture Trust Co. v. Maverick Tube Corp.,
    595 F.3d 458 (2d Cir. 2010)............................................................................8, 9

Lee v. W. Architecture and Landscape Architecture, LLC,
    17 CV 05820, 2019 WL 2272757 (E.D.N.Y. May 28, 2019)................................15

Lieb v. Topstone Indus., Inc.,
    788 F.2d 151 (3d Cir. 1986).............................................................................12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).......................................................................................6

Matthew Bender & Co. v. West Publ'g Co.,
    240 F.3d 116 (2d Cir. 2001).............................................................................12

Reynolds v. Hearst Comms., Inc.,
    No. 17cv6720, 2018 U.S. Dist. LEXIS 35453 (S.D.N.Y. Mar. 5, 2018)..................15

Smith v. Barnesandnoble.com, LLC,
    839 F.3d 163 (2d Cir. 2016).............................................................................8, 9

Spinelli v. NFL,
    903 F.3d 185 (2d Cir. 2018).............................................................................10

United States v. Int'l Bhd. of Teamsters,
    948 F.2d 1338 (2d Cir. 1991)...........................................................................12

Wolk v. Kodak Imaging Network, Inc.,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012) aff'd 569 Fed. Appx. 51 (2d Cir. 2014) ....................10

**Statutes**

17 U.S.C. § 505................................................................................................ passim

28 U.S.C. § 1927.............................................................................................. passim

Digital Millennium Copyright Act......................................................................... passim

**Other Authorities**

Fed. R. Civ. P. 56(e) ..................................................................................................................6

Defendants MVP Group International, Inc. ("MVP"), Bed Bath & Beyond Inc. ("BBB"), Wayfair LLC ("Wayfair") (collectively, the "MVP Defendants"), and Jet.com, Inc. ("Jet") (collectively, "Defendants"), by and through their respective undersigned counsel, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for costs, attorneys' fees, and sanctions pursuant to 17 U.S.C. § 505, 28 U.S.C. § 1927, and the Court's inherent power.

## PRELIMINARY STATEMENT

This lawsuit, which is but one of over one thousand copyright infringement actions commenced by Plaintiff's counsel in this Circuit since 2016, is both meritless and frivolous.

Plaintiff alleges that MVP violated the Copyright Act by producing and selling candles that bear on their product packaging a photograph of a tropical hibiscus plant taken by Plaintiff (the "Photograph"), and that BBB, Wayfair, and Jet violated the Copyright Act by selling MVP's candles on their respective websites. As Plaintiff knew or should have known, however, MVP purchased the right to use the Photograph from iStock, a Getty Images licensing agency which Plaintiff permitted to license the Photograph. MVP was thus at all relevant times a party to a valid iStock content license agreement that expressly permitted MVP to use the Photograph on, *inter alia*, product packaging. The fact that MVP's challenged actions fall squarely within the valid license is fatal to Plaintiff's claims against MVP. Further, because Plaintiff's claims against BBB, Wayfair, and Jet are predicated on MVP's purported infringement (i.e., secondary infringement claims), and because these Defendants are service providers who serve as mere passive conduits, those claims also fail as a matter of law. Thus, Defendants are entitled to judgment as a matter of law as to Plaintiff's remaining claims against them.

Not only should this action be dismissed in its entirety, it never should have been commenced in the first place. Plaintiff undoubtedly knew that he permitted iStock to license the Photograph. As such, the Complaint's lack of any reference to iStock evidences either a wholesale failure to conduct a reasonable pre-suit investigation by Plaintiff's counsel, or, worse yet, an attempt by Plaintiff and his counsel to hide this critical fact from the Court. Moreover, counsel for the MVP Defendants notified Plaintiff's counsel shortly after this action was commenced that MVP held a valid license in the Photograph. Yet, despite being informed of this admittedly dispositive fact, Plaintiff's counsel has refused to voluntarily dismiss this action and has instead forced Defendants to incur unnecessary cost and expense. Defendants respectfully submit that the frivolous and vexatious actions of Plaintiff and his counsel should not be countenanced, and that, as a result of such actions, Defendants are entitled to costs, attorneys' fees, and sanctions.

## FACTS

This action centers on the purported use of the Photograph, which Plaintiff alleges he took in Mazatlan, Mexico (the "Photograph"). <u>Complaint</u> ¶ 10, Ex. A. Plaintiff alleges that he has "at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto," and that "[t]he Photograph was registered with U.S. Copyright Office and was given Copyright Registration Number VA 2-005-569." <u>Id.</u> ¶¶ 12-13. Defendants cannot confirm the veracity of Plaintiff's allegations regarding either Plaintiff's ownership of the Photograph or copyright registration thereof. Even if both such allegations are accurate, however, Plaintiff's claims against Defendants nevertheless fail as a matter of law.

MVP designs and manufactures private label candles and related products, including under the brand name "Colonial Candle." <u>Complaint</u> ¶¶ 6, 15; <u>Defendants MVP Group International, Inc., Bed Bath & Beyond Inc., and Wayfair LLC's Answer</u> (<u>Dkt. No.</u> 13) ("<u>MVP Defs. Answer</u>")

¶¶ 6, 15. Certain of MVP's candles are sold by online retailers, including BBB, Wayfair, and Jet. Complaint Ex. D-F; MVP Defs. Answer ¶ 18; Defendant Jet.com, Inc. Answer (Dkt. No. 18) ("Jet Answer") ¶ 24. MVP routinely purchases the right to use licensed photographs from online stock photography licensing agencies, including iStock. Declaration of Matt Dillon, Esq. ("Dillon Declaration") ¶ 3. MVP then incorporates such photographs on labels that are adhered to glass jars containing its candles (i.e., the candle product packaging). Complaint Ex. C.

MVP followed this routine practice with respect to the Photograph. On September 21, 2011, MVP downloaded the Photograph for a fee from iStock's website (www.istockphoto.com). Dillon Declaration ¶ 4. As such, Plaintiff's allegation that MVP "copied the Photograph from FineArtsAmerica.com" is patently false. Id.; Complaint ¶ 14; MVP Defs. Answer ¶ 15. MVP subsequently incorporated the Photograph on labels adhered to glass jars holding its "Tropical Nectar" line of Colonial Candle-brand candles (i.e., the candle product packaging). Complaint Ex. C.

As part of the fee it paid iStock for the Photograph, MVP received and entered into a Content License Agreement, which permits extensive uses of the Photograph. Dillon Declaration ¶ 5; Declaration of George R. McGuire, Esq. ("McGuire Declaration"), Ex. F (the "iStock License"). The iStock License provides, "We hereby grant to you a perpetual, non-exclusive, non-transferrable worldwide license to use the Content for the Permitted Uses (as defined below)." Id. § 2. Further, iStock expressly warrants that MVP's (i) "use of the Content in accordance with [the iStock License] and in the form delivered by iStockphoto will not infringe on any copyright, moral right, trademark or other intellectual property right and will not violate any right of privacy or right of publicity; and (ii) all necessary model and/or property releases for use of the Content in the manner authorized under [the iStock License] have been obtained." Id. § 7.

3

As relevant, the term "Content" is defined in the iStock License as "any photographic image . . . visual representation generated optically, electronically, digitally or by any other means or in any media or other material that you are downloading from the Site, together with any accompanying material." Id. § 1(b)(3). The iStock License defines "'Permitted Uses' of Content" as including, *inter alia*, "advertising and promotional projects, including printed materials [and] product packaging." Id. § 3(c)(1). The iStock License, by its express terms, "is effective until it is terminated." Id. § 6(a). Thus, MVP's use of the Photograph in its "Tropical Nectar" product packaging was at all times pursuant to, and in compliance with, the iStock License. This indisputable fact is fatal to all of Plaintiff's claims against the Defendants.

Plaintiff commenced this action by filing a Complaint on November 14, 2016. See McGuire Declaration Ex. A. Shortly thereafter, counsel for the MVP Defendants notified Plaintiff's counsel that MVP had a valid license from iStock to use the Photograph in the manner alleged. McGuire Declaration ¶ 3. Counsel for the MVP Defendants expressly raised this defense in correspondence to the Court dated January 4, 2017, as well as in the MVP Defendants' Answer, dated January 10, 2017. McGuire Declaration Exs. B, C and MVP Defs. Answer ¶¶ 50-52. The existence and content of the iStock License was again raised and discussed at an interim pretrial conference with the parties' counsel and the Court held on or about June 22, 2017. McGuire Declaration ¶ 6. Shortly thereafter, in a letter to the Court dated August 15, 2017, Plaintiff's counsel admitted that "[t]he existence of a license that allegedly covers the infringing use would be dispositive." Dkt. No. 23.

There was no substantive activity in this action between September 2017 and September 2018. On September 17, 2018, counsel for the MVP Defendants e-mailed Plaintiff's counsel and inquired whether, in light of Plaintiff's inaction in the case, and the existence of the iStock License,

Plaintiff would agree to voluntarily dismiss the action. McGuire Declaration Ex. D. Plaintiff's counsel responded that same day, stating that while Plaintiff would be open to transferring venue to South Carolina, "[w]e will not agree to dismiss the case." Id.

On September 19, 2018, the MVP Defendants' counsel filed a letter informing the Court of Plaintiff's refusal to stipulate to dismissal of this action, expressing interest in filing the instant motion, and requesting a conference to set a case schedule. See Dkt. No. 26. On September 20, 2018, despite the fact that Plaintiff never served discovery on Defendants, counsel for the MVP Defendants provided Plaintiff's counsel a copy of the iStock License. McGuire Declaration Exs. E, F. In a teleconference with the parties' counsel and the Court held on October 2, 2018, the Court granted Defendants permission to file the instant motion. McGuire Declaration ¶ 9. Following the October 2 teleconference with the Court, counsel for the MVP Defendants again inquired in a telephone call with Plaintiff's counsel whether Plaintiff would consent to dismissing this action. McGuire Declaration ¶ 10. Although Plaintiff's counsel offered to voluntarily dismiss the second cause of action (against MVP under the DMCA), he again refused to dismiss Plaintiff's principal claim against all Defendants under the Copyright Act. See id.

On March 2, 2020, the Court ordered the parties to provide a case status update on or before March 9, 2020. Dkt. No. 29. Plaintiff's counsel inquired whether Defendants would be amenable to mediation. McGuire Declaration ¶ 11. Defendants declined Plaintiff's mediation proposal and, once again, inquired whether Plaintiff would voluntarily dismiss all claims against Defendants. Id. Once again, Plaintiff refused to voluntarily dismiss his claims against Defendants. Id. As such, on March 20, 2020, Defendants filed a pre-motion letter requesting leave to file the instant motion and, following Plaintiff's opposition, and Defendants' reply, the Court granted Defendants' requested leave. Dkt. Nos. 32, 34-36. On April 15, 2020, the parties entered into a Joint

Stipulation pursuant to which Plaintiff agreed to dismiss with prejudice his second cause of action, which alleged a violation of Section 1202(b) of the Digital Millennium Copyright Act. Plaintiff continued to refuse, however, to dismiss his first cause of action.

As a direct result of Plaintiff's insistence on continuing to litigate his frivolous claims, Defendants were forced to prepare and file the instant motion. To date, the MVP, Wayfair and BBB Defendants have incurred $1,453.42 in costs and $54,495.00 in attorneys' fees in defending against Plaintiff's frivolous claims. McGuire Declaration ¶ 12. To date, the Jet Defendant has incurred $4.20 in costs and expended $10,097.00 in attorneys' fees in defending against Plaintiff's frivolous claims Tajika Declaration ¶ 2.

## **ARGUMENT**

"Under Rule 56" of the Federal Rules of Civil Procedure, "summary judgment shall be rendered if the" record evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 350 (S.D.N.Y. 2003) (Preska, D.J.) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party,' and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination." Baker, 254 F. Supp. 2d at 350 (quoting Anderson, 477 U.S. at 248). Where, as here, the movant "meets its burden, the burden then shifts to the non-moving party to come forward with 'specific facts showing that there is a genuine issue for trial.'" Baker, 254 F. Supp. 2d at 351 (quoting Fed. R. Civ. P. 56(e)). "The non-moving party must 'do more than simply show there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

As established below, there are no genuine issues of material fact in this action.  Defendants are entitled to judgment a matter of law as to Plaintiff's remaining cause of action.  Defendants' motion for summary judgment should therefore be granted.

## I.  DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FIRST CAUSE OF ACTION

In his first cause of action, Plaintiff alleges that Defendants committed copyright infringement in violation of Sections 106 and 501 of the Copyright Act.  Complaint ¶¶ 27-34.[1] The undisputed facts establish that none of the Defendants infringed any copyright Plaintiff may have had in the Photograph.  Plaintiff's first claim therefore fails as a matter of law.

"In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003).  Even assuming, *arguendo*, that Plaintiff owns or owned a valid copyright in the Photograph, he is precluded as a matter of law from establishing the second requisite element of his infringement claim – i.e., that any Defendant undertook any unauthorized copying of the Photograph.

It is axiomatic that "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."  Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998); see Davis v. Blige, 505 F.3d 90, 100 (2d Cir. 2007) (stating that a valid license "immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor").  Here, Plaintiff

---

[1] Plaintiff's Complaint runs afoul of Fed. R. Civ. P. 8 by lumping all Defendants in the same claim.  "'A plaintiff fails to satisfy [R]ule 8, where the complaint lumps all defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.'"  Gench v. HostGator.com, LLC, 14 Civ. 3592 (RA) (GWG), 2015 U.S. Dist. LEXIS 78309, at *28 (S.D.N.Y. June 17, 2015) (citation omitted).

permitted iStock to license the Photograph.  See iStock License; Dillon Declaration ¶¶ 4-5.  MVP purchased and downloaded the Photograph from iStock's website on September 21, 2011 and, in so doing, received and entered into the iStock License with respect to the Photograph.  Dillon Declaration ¶¶ 4-5.

"Copyright disputes involving only the scope of the alleged infringer's license present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the defendant's activities."  Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995).  Further, "[w]here, as here, the existence of the license is undisputed, and the only contested issue is its scope, the copyright owner bears the burden of proving that the defendant's conduct was unauthorized under the license."  Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 167 (2d Cir. 2016) (citing Graham, 144 F.3d at 236).  Under the plain language of the iStock License and the undisputed facts, Plaintiff cannot meet his burden.

The iStock License grants MVP a "perpetual, non-exclusive, non-transferable worldwide license to use the Content for the Permitted Uses."  iStock License § 2.  The iStock License defines the term "Content" as, *inter alia*, "any photographic image . . . visual representation generated optically, electronically, digitally or by any other means or in any media or other material that you are downloading from the Site, together with any accompanying material."  Id. § 1(b)(3).  Thus, the Photograph plainly qualifies as "Content."

The iStock License defines various "Permitted Uses," including "advertising and promotional projects, including printed materials [and] product packaging."  Id. § 3(c)(1).  MVP incorporated the Photograph on labels adhered to glass jars holding its "Tropical Nectar" line of Colonial Candle-brand candles.  See Complaint Ex. C.  This usage falls squarely within the plain and unambiguous meaning of the term "product packaging."  See, e.g., Law Debenture Trust Co.

8

v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (noting the well-settled contract interpretation principles that "a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms," and that such plain language "does not become ambiguous merely because the parties urge different interpretations in the litigation").  Indeed, the term "product packaging" has repeatedly been described in the intellectual property context as referring to "'the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements.'"  See, e.g., Eliya, Inc. v. Kohl's Corp., No. CV 15-2123, 2016 U.S. Dist. LEXIS 22086, at *9 (E.D.N.Y. Feb. 22, 2016) (quoting Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1005 (2d Cir. 1997)).

In Goodman v. Universal Beauty Products, Inc., the defendant's use of plaintiff photographer's photograph on "the Shave Gel [product] in a package featuring the [p]hotograph" was not permitted under the limited license in that case, which did not provide for use on "product packaging."  17 Civ. 1716 (KBF), 2018 WL 1274855, at *2, 6 (S.D.N.Y. Mar. 9, 2018).[2]  In contrast, here, the iStock License expressly and unambiguously permits use on "product packaging."  Because MVP's use of the Photograph falls squarely within the definition of "product packaging" and was fully permitted by the iStock License, Plaintiff's claim against MVP under the Copyright Act fails as a matter of law.  See, e.g., Smith, 839 F.3d at 167.

Plaintiff's inability to establish a claim of direct copyright infringement against MVP mandates dismissal of Plaintiff's first cause of action against all other Defendants.  Plaintiff does not allege that any Defendant other than MVP actually copied the Photograph.  Instead, Plaintiff

---

[2] Plaintiff's counsel was the counsel for the plaintiff photographer in the Goodman case.  Having litigated this issue before, the difference in the language of the iStock License and the limited license at issue in Goodman should have been apparent to Plaintiff's counsel.

alleges only that BBB, Wayfair, and Jet offered MVP's purportedly infringing candles for sale on their respective websites.  See Complaint ¶¶ 18-26.  "Without a showing of a direct copyright infringement," however, "secondary liability cannot be maintained."  Spinelli v. NFL, 903 F.3d 185, 197 (2d Cir. 2018) (citing, *inter alia*, Faulkner v. Nat'l Geographic Enters., 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory infringement absent actual infringement.")).  Indeed, the Complaint only asserts a claim for direct copyright infringement against BBB, Wayfair, and Jet (see Complaint ¶¶ 27-34), and fails to even allege that any of them is liable on a secondary liability theory (i.e., vicarious liability or contribution infringement).

The claims against BBB, Wayfair, and Jet fail as a matter of law for at least one other reason.  When a service provider, such as BBB, Wayfair, and Jet here, "serves, without human intervention, as a passive conduit for copyrighted material, it is not liable as a direct infringer."  ALS Scan, Inc. v. RemarQ Cmtys., Inc., 239 F.3d 619, 621-22 (4th Cir. 2001).  Evidence of volitional conduct is needed to hold a service provider liable for direct infringement.  Cartoon Network LP, LLP v. CSC Holdings, Inc., 536 F.3d 121, 130-31 (2d Cir. 2008) (a service provider cannot be liable for direct copyright infringement unless there is evidence of volitional conduct); Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 742-43 (S.D.N.Y. 2012) (granting summary judgment of no liability for direct copyright infringement because "there is no evidence of volitional conduct" and "the display of copyrighted images on a defendant's website does not demonstrate volition") aff'd, 569 Fed. Appx. 51 (2d Cir. 2014).  Volitional conduct sufficient to constitute direct copyright infringement is something more than passive use of a system that "is merely used to create a copy by a third party."  Cartoon Network, 536 F.3d at 130 (quotation omitted).

Here, there is no evidence, much less any allegation that any of BBB, Wayfair, or Jet engaged in volitional conduct in the sale of the purportedly infringing candles, because Plaintiff fails to allege that they copied the Photograph. And there is no dispute that BBB, Wayfair, and Jet did not create the candles. These other Defendants were merely a passive conduit through which third-party retailers could sell their products. Thus, BBB, Wayfair, and Jet are mere service providers who are not liable for direct infringement as a matter of law.

Because Plaintiff cannot establish that MVP directly infringed his rights in the Photograph, because Plaintiff failed to even make out a claim for secondary liability against BBB, Wayfair, or Jet, and because these other Defendants are mere service providers serving as passive conduits, Plaintiff's secondary infringement claims against BBB, Wayfair, and Jet fail as a matter of law.

## II. DEFENDANTS ARE ENTITLED TO COSTS, ATTORNEYS' FEES AND SANCTIONS

As a result of the patently frivolous nature of Plaintiff's claims in this action, and Plaintiff's inexplicable insistence on nevertheless continuing to pursue those claims, Defendants are entitled to costs and attorney's fees from Plaintiff pursuant to Section 505 of the Copyright Act, and to costs, attorneys' fees and sanctions from Plaintiff's attorney pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

"Under Section 505 of the Copyright Act, a court has discretion to allow the recovery of full costs to any party in a civil action brought under the Copyright Act." Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 356-67 (S.D.N.Y. 2006) (Preska, D.J.) (citing 17 U.S.C. § 505). "As part of the costs, a court may 'also award a reasonable attorney's fee to the prevailing party.'" Id. at 357 (quoting 17 U.S.C. § 505). This judicial discretion to award costs and attorneys' fees applies equally to "prevailing plaintiffs and defendants." Id.

11

In determining whether to award costs and attorneys' fees, "courts generally consider a number of equitable factors, including the non-prevailing party's frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), together with the need in particular circumstances to advance considerations of compensation and deterrence." Baker, 431 F. Supp. 2d at 357 (citing Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986); Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19 (1994); and Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 121 (2d Cir. 2001)).  In the Second Circuit, the "objective unreasonableness" factor "is one of the most significant factors" and "is given substantial weight in determining whether fees are warranted." Id. (citing Matthew Bender & Co., 240 F.3d at 122; Earth Flag Ltd. v. Alamo Flag Co., 154 F. Supp. 2d 663,666 (S.D.N.Y. 2001)).  Indeed, this factor alone is sufficient to justify an award of costs and attorneys' fees. See id.

Relatedly, "[p]ursuant to 28 U.S.C. § 1927, an attorney of record in a case may be required personally to pay costs, expenses, and attorney's fees that are caused by counsel's unreasonable and vexatious conduct." Baker, 431 F. Supp. 2d at 362.  "'By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics.'" Baker, 431 F. Supp. 2d at 362 (quoting United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991)).  "In considering whether there has been bad faith" sufficient to justify an award under Section 1927, "the court may consider the manner in which the action was brought and the manner in which it was litigated," and such bad faith may be inferred by an attorney's objectively unreasonable actions. Baker, 431 F. Supp. 2d at 362.  Similarly, under the Court's inherent power, the Court "may assess attorney's fees when a party [or lawyer] has acted in bad faith, vexatiously, wantonly,

12

or for oppressive reasons," and the standard under Section 1927 and the Court's inherent power are effectively the same.  Id. (citing Chambers v. Nasco, Inc., 501 U.S. 32, 44-45 (1991)).

Here, both the commencement and continued prosecution of this action evidence objectively unreasonable and vexatious conduct on the part of Plaintiff and his counsel.  Plaintiff of course knew that he had permitted iStock to license the Photograph, yet he alleged in the Complaint that he "first published the Photograph on the publicly facing website www.FineArtAmerica.com to sell his photograph," and that, "[u]pon information and belief, MVP copied the Photograph from FineArtAmerica.com."  Complaint ¶¶ 11, 14.  The Complaint makes no mention of Plaintiff having permitted iStock to license the Photograph or of the possibility that MVP validly licensed the Photograph from iStock.  Thus, the only possible scenarios are that (i) Plaintiff's counsel did not perform any pre-suit investigation before drafting and filing the Complaint; (ii) Plaintiff's counsel did perform a pre-suit investigation but was misled by Plaintiff; or (iii) Plaintiff and Plaintiff's counsel knew that iStock was permitted to license the Photograph but omitted this critical information from the Complaint.  Under any of the scenarios, the very commencement of this action was objectively unreasonable.

Further, the MVP Defendants' counsel informed Plaintiff's counsel of the iStock License shortly after this action was commenced, and, despite Plaintiff never having served discovery demands on Defendants, produced a copy of the License to Plaintiff's counsel on September 20, 2018.  See McGuire Declaration ¶¶ 3, 8 Exs. E, F.  Despite the fact that MVP's alleged actions fall squarely within the uses permitted by the plain language of the iStock License, Plaintiff and his counsel have nevertheless refused to voluntarily discontinue this action, thereby requiring Defendants to incur the cost and expense of their continued defense, including preparing and filing the instant motion.  This refusal is even more frivolous in light of Plaintiff's counsel's own

admission to the Court that "[t]he existence of a license that allegedly covers the infringing use would be dispositive." Dkt. No. 23.

As a result of the unreasonable actions of Plaintiff and his counsel, the MVP Defendants have incurred $1,453.42 in costs and $54,495.00 in attorneys' fees, and the Jet Defendant has incurred $4.20 in costs and expended $10,097.00 in attorneys' fees, in defending against Plaintiff's claims. McGuire Declaration ¶ 11; Tajika Declaration ¶ 2.[3] It would violate the policies underlying the Copyright Act to burden Defendants with these costs and expenses. See, e.g., Baker, 431 F. Supp. 2d at 359 (holding that where, as here, the plaintiff's unreasonable prosecution of the action requires defendants to "engage counsel and expend resources to effect the dismissal of" plaintiff's claims, "the policies behind the Copyright Act would be violated by requiring [the defendants] to bear [their] own costs and fees") (citing Fogerty, 510 U.S. at 529).

This Court has also highlighted the importance of awarding costs and attorneys' fees in cases such as this, "so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose." Baker, 431 F. Supp. 2d at 359 (citing Earth Flag Ltd., 154 F. Supp. 2d at 668). Deterrence is particularly important here in light of Plaintiff's counsel's well-documented litigation practices. As the Honorable Denise Cote summarized in March of 2018:

> Mr. Liebowitz has filed over 500 cases in this district in the past twenty-four months. He has been labelled a copyright 'troll.' Mr. Liebowitz has been sanctioned by this Court for failure to comply with court orders and for filing misleading documents with the Court. A number [of] Mr. Liebowitz's cases have been dismissed from the bench as frivolous. Multiple courts, on their own

---

[3] In the event the Court requires further documentation to substantiate Defendants' costs and fees calculations, Defendants respectfully request that they be permitted to file same under seal for *in camera* review by the Court.

initiative, have ordered Mr. Liebowitz to show cause why he should not be required to post security for costs as a condition of proceeding further with an action.

Reynolds v. Hearst Comms., Inc., No. 17cv6720, 2018 U.S. Dist. LEXIS 35453, at *9-10 (S.D.N.Y. Mar. 5, 2018) (collecting cases) (internal citations omitted); see Lee v. W. Architecture and Landscape Architecture, LLC, 18 CV 05820 (PKC) (CLP), 2019 WL 2272757, at *3, 6 (E.D.N.Y. May 28, 2019) (noting that Plaintiff's counsel has filed over a thousand cases in this Circuit and requiring Plaintiff's counsel to post a $10,000 bond based on, among other factors, counsel's litigation conduct). This well-documented scorched-earth litigation strategy strongly suggests that, in the absence of being assessed appropriate costs, fees, and sanctions, Plaintiff's counsel will continue to employ the vexatious and unreasonable measures that he exhibited in this action.

In short, Defendants are entitled to costs and attorneys' fees from Plaintiff, and to costs, attorneys' fees, and sanctions from Plaintiff's counsel.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (i) grant the instant motion for summary judgment and dismiss Plaintiff's remaining cause of action in its entirety, with prejudice, and (ii) grant the instant motion for costs, attorneys' fees and sanctions against Plaintiff and his attorney and in favor of Defendants.

Dated:  April 15, 2020

BOND, SCHOENECK & KING, PLLC

By:    *s/ George R. McGuire*
       George R. McGuire
       Brendan M. Sheehan
One Lincoln Center
Syracuse, New York  13202
Telephone:  (315) 218-8515
Fax:  (315) 218-8415
E-mail:  gmcguire@bsk.com
       bsheehan@bsk.com

*Attorneys for the MVP Defendants*

INGRAM YUZEK GAINEN CARROLL &
BERTOLOTTI, LLP

By:    *s/ Mioko C. Tajika*
       Mioko C. Tajika
150 East 42nd Street, 19th Floor
New York, New York  10017
Telephone:  (212) 907-9600
Fax:  (212) 907-9681
E-mail: mtajika@ingramllp.com

*Attorneys for Defendant Jet.com, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2020, I electronically filed the foregoing **Joint Memorandum of Law in Support of Defendant's Motion for Summary Judgment and for Costs, Attorney's Fees, and Sanctions** with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to All Counsel.


*s/George McGuire*
George McGuire

17