UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHANE BECHLER,

                              Plaintiff,

        - against -


MVP GROUP INTERNATIONAL, INC.

                    Defendant.

Case No. 16-cv-8837 (LAP)


ECF Case


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF RELEVANT FACTS ....................................................................................... 2

LEGAL STANDARD...................................................................................................................... 7

ARGUMENT .................................................................................................................................. 8

POINT I:  MVP EXCEEDED THE SCOPE OF THE iSTOCK LICENSE BY USING THE PHOTOGRAPH AS A DESIGN MARK ON A PRODUCT LABEL......................... 8

A.  THE iSTOCK LICENSE AGREEMENT DOES NOT EXPRESSLY PERMIT USE OF THE PHOTOGRAPH AS A "LABEL" AFFIXED TO A PRODUCT .......................................................... 9

B.  THE iSTOCK LICENSE EXPRESSLY PROHIBITS USE OF THE PHOTOGRAPH AS PART OF A "DESIGN MARK" (I.E., TO IDENTIFY OR DISTINGUISH THE PRODUCT IN COMMERCE) .......... 13

POINT II:  IN THE EVENT THE COURT FINDS THE ISTOCK AGREEMENT AMBIGUOUS, THEN SUMMARY JUDGMENT MUST BE DENIED ................ 14

POINT III:  DISTRIBUTION OF THE PHOTOGRAPH BY DEFENDANTS CONSTITUTES A VOLITIONAL ACT TO SUSTAIN A CLAIM OF DIRECT INFRINGEMENT ... 15

POINT IV:  DEFENDANTS' MOTION FOR FEES SHOULD BE DENIED ........................... 15

POINT V:  DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE OF BAD FAITH TO SUPPORT SANCTIONS UNDER 28 U.S.C. §1927......................................... 19

CONCLUSION.............................................................................................................................. 20

# TABLE OF AUTHORITIES

<u>**CASES**</u>

*American Fuel Corp. v. Utah Energy Development Co., Inc.,*
 122 F.3d 130, 134 (2d Cir.1997) ------------------------------------------------------------------------10

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ----------------------------------- 8

*Arista Records LLC v. Usenet.com, Inc.,*
 633 F. Supp. 2d 124, 147 (S.D.N.Y. 2009) ------------------------------------------------------15

*Associated Press v. Meltwater U.S. Holdings, Inc.,*
 931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013)---------------------------------------------------- 8

*Baker v. Urban Outfitters, Inc.,*
 431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d --------------------------16

*Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.,*
 821 F.3d 297, 307 (2d Cir. 2016)-------------------------------------------------------------------10

*Bar–Ayal v. Time Warner Cable Inc.,*
 No. 03 CV 9905, 2006 WL 2990032, at * 14 n. 25 (S.D.N.Y. Oct.16, 2006)--------------------11

*Berkla v. Corel Corp.,*
 302 F.3d 909, 923 (9th Cir. 2002) ------------------------------------------------------------------19

*Berry v. Deutsche Bank Trust Co. Am.,*
 632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) -------------------------------------------------------17

*Bourne v. Walt Disney Co.,*
 68 F.3d 621, 629 (2d Cir.1995 ----------------------------------------------------------------------14

*Bridgeport Music, Inc. v. WB Music Corp.,*
 520 F.3d 588, 593 (6th Cir. 2008). -----------------------------------------------------------------18

*Bryant v. Media Right Productions, Inc.,*
 603 F.3d 135, 144 (2d Cir. 2010)-------------------------------------------------------------------16

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
 150 F.3d 132, 137 (2d Cir. 1998)-------------------------------------------------------------------17

*Cifra v. G.E. Co.,*
 252 F.3d 205, 216 (2d Cir. 2001)------------------------------------------------------------------- 8

*Diamond v. Am-Law Publ'g Corp.*,
    745 F.2d 142, 147 (2d Cir. 1984)----------------------------------------------------------19

*Eliya, Inc. v. Kohl's Corp.*,
    No. CV 15-2123(JFB)(GRB), 2016 WL 929266, at *1 (E.D.N.Y. Feb. 22, 2016), *report and
    recommendation adopted*, No. 15CV2123JFBGRB, 2016 WL 929321 (E.D.N.Y. Mar. 9,
    2016) --------------------------------------------------------------------------------------------------------12

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
    639 F.3d 557, 567 (2d Cir. 2011)-------------------------------------------------------------------------11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340, 361 (1991) --------------------------------------------------------------------------------17

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517,535 n.19 (1994)--------------------------------------------------------------------------16

*Graham v. James*,
    144 F.3d 229, 236 (2d Cir. 1998)-------------------------------------------------------------------- 8

*Great Minds v. Fedex Office & Print Servs., Inc.*,
    886 F.3d 91, 94 (2d Cir. 2018)----------------------------------------------------------------------- 9

*Hallfordv. Fox Entm't Grp., Inc.*,
    12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) -----------------------17

*Hayes v. N.Y. City Dep't of Corr.*,
    84 F.3d 614, 619 (2d Cir.1996) ---------------------------------------------------------------------- 7

*In re World Trade Ctr. Disaster Site Litig.*,
    2014 WL 2565821, at *6 (2d Cir. June 9, 2014) -------------------------------------------------10

*Jeffreys v. City of New York*,
    426 F.3d 549, 553–54 (2d Cir. 2005) ---------------------------------------------------------------- 7

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996, 1011 (2d Cir. 1995)---------------------------------------------------------------------16

*Leutwyler v. Royal Hashemite Court of Jordan*,
    184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) -------------------------------------------------------- 9

*Marshall v. New Kids On The Block P'ship*,
    780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) ---------------------------------------------------------- 8

*Matthew Bender & Co. v. West Publ'g Co.*,
  240 F.3d 116, 122 (2d Cir. 2001)------------------------------------------------------16

*Microsoft Corp. v. Harmony Computers & Elecs., Inc.*,
  846 F. Supp. 208, 214 (E.D.N.Y. 1994) ----------------------------------------- 8

*Milltex Indus. Corp. v. Jacquard Lace Co.*,
  55 F.3d 34, 38 (2d Cir.1995) ---------------------------------------------------20

*Moses v. Apple Hosp. REIT Inc.*,
  No. 14CV3131DLISMG, 2016 WL 8711089, at *6 (E.D.N.Y. Sept. 30, 2016)-----------------10

*Neitzke v. Williams*,
  490 U.S. 319,325 (1989)--------------------------------------------------------17

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*,
  315 F.3d 171, 175 (2d Cir. 2003)----------------------------------------------- 7

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) -------------------------------------19

*Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*,
  96-cv-4126 (RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004) -------------------------17

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 71 (2d Cir.2000) -----------------------------------------------------20

*Rule v. Brine, Inc.*,
  85 F.3d 1002, 1011 (2d Cir.1996) ---------------------------------------------- 7

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
  959 F.2d 425, 428 (2d Cir.1992).----------------------------------------------14

*Silberstein v. Fox Entm 't Grp., Inc.*,
  536 F. Supp. 2d 440,444 (S.D.N.Y. 2008) -------------------------------------------17

*Torah Soft Ltd. v. Drosnin*,
  224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ------------------------------------------20

*Uniroyal, Inc. v. Heller*,
  65 F.R.D. 83, 92 (S.D.N.Y. 1974)------------------------------------------------10

*United States v. Rem*,
  38 F.3d 634, 644 (2d Cir.1994) ------------------------------------------------- 8

*Viva Video, Inc. v. Cabrera,*
    9 F. App'x 77, 80 (2d Cir. 2001)----------------------------------------------------17

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage,*
    564 F.3d 110, 114–15 (2d Cir. 2009) ------------------------------------------19

S<small>TATUTES</small>

17 U.S.C. § 505 ----------------------------------------------------------------------16
18 U.S.C. § 1927----------------------------------------------------------------------19

T<small>REATISES</small>

*Nimmer on Copyright* § 10.08 (2001))----------------------------------------- 9

Plaintiff respectfully submits this memorandum of law in opposition to Defendants' motion for summary judgment.

## INTRODUCTION

Defendants have repeatedly admitted throughout the course of this litigation that they used the Photograph as part of product "label" [56.1 ¶¶ 40-47]  Even the answer admits that the Photograph was used in "**MVP's labels** for its 'Tropical Nectar' fragrance line of 'Colonial Candle' brand of candles." [Answer ¶ 15 (Dkt. #13)] (emphasis added).

Notwithstanding, Defendants' primary argument in support of their license defense is that use of the Photograph as a label should be *construed* by the Court as "product packaging", which constitutes a Permitted Use under the iStock License Agreement.  The problem with this argument is that it asks the Court to rewrite the iStock License Agreement to insert language that does not appear anywhere within the four corners of that agreement.

Simply put, use of the Photograph as a "label" is not expressly authorized by the Permitted Use section of the iStock License Agreement. [56.1 ¶ 33]  Indeed, the word "label" is nowhere to found anywhere within the four corners of the iStock License Agreement. [56.1 ¶¶ 34-35]  Having failed to show that Defendants' use of the Photograph as a label was expressly authorized, Defendants ask the Court to reconstruct the contract by reading the word "label" into the term "product packaging."  Such reconstruction is not permitted.

Here, __either__ the Court should determine that use of the Photograph as a product label and/or design mark is outside the scope of the iStock Licensing Agreement as a matter of law, (which would mandate dismissal of the license defense) __or__ the Court should finds that the iStock Licensing Agreement is susceptible to multiple reasonable interpretations, one of which is that the term "product packaging" includes labels and the other is that it does not.

## STATEMENT OF RELEVANT FACTS

**MVP's Standard License Agreement w/ iStock**

MVP entered into Content License Agreement with third-party iStock Photo, the form of which is dated in 2010 (the "License Agreement"). [Plaintiff's Counter-Statement of Facts Under L.R. 56.1 ("56.1") ¶ 25]

Pursuant to the terms of the License Agreement, the term "Content" is defined as "any photographic image . . . visual representation generated optically, electronically, digitally or by any other means or in any media or other material that you are downloading from the Site, together with any accompanying material." [56.1 ¶ 26] Under the License Agreement, the photograph at issue in this lawsuit (the "Photograph") constitutes "Content." [56.1 ¶ 27]

Pursuant to the terms of the License Agreement, MVP had the option to enter into either a "Standard License" or an "Extended License." [56.1 ¶ 28] MVP's download of the Photograph was subject to the Standard License and therefore subject to the License Agreement's Standard License Terms. [56.1 ¶ 29]

Under the Standard License Terms, the License Agreement provides that "[u]nless the activity or use is a Permitted Use, you cannot do it." [56.1 ¶ 30] The License Agreement also provides that "[a]ny use of the Content that is not a Permitted Use shall constitute infringement of copyright." [56.1 ¶ 32]

Under the "Permitted Standard Licenses Use," the License Agreement provides that "(a) You may only use the Content for those advertising, promotional and other specified purposes which are Permitted Uses (as defined below). For clarity, you may not use the Content in products for resale, license or other distribution, unless (i) the

proposed use is allowable under an Extended License which is available for the Content;"
[56.1 ¶ 31]

**Use of the Photograph as a "Label" is NOT a Permitted Use Under the License**

The License Agreement does not expressly provide that use of the Photograph on "labels" is a Permitted Use nor a Permitted Standard Licenses Use. [56.1 ¶ 33]  Indeed, the words "labels," label" or labeling" do not appear anywhere within the four corners of the License Agreement. [56.1 ¶ 34]  The terms "product labels", "product label," or "product labeling" do not appear anywhere within the four corners of the License Agreement. [56.1 ¶ 35]

Under the License Agreement, using the Photograph on product labels is not a Permitted Use.  [56.1 ¶ 36]

**Use of the Photograph As a "Design Mark" is Expressly Prohibited by the License**

The License Agreement contains a provision entitled "Standard License Prohibitions" which provides that "[y]ou may not do anything with the Content that is not expressly permitted in the preceding section or permitted by an Extended License." [56.1 ¶ 37]  The License Agreement provides that "use any of the Content as part of a trade-mark, design-mark, trade-name, business name, service mark, or logo" is prohibited. [56.1 ¶ 38] Under the License Agreement, use of the Photograph as part of a "design-mark" would constitute infringement of copyright. [56.1 ¶ 39]

**Defendants Repeatedly Admit to Using the Photograph as a "Label" and "Design"**

In Defendants' letter to the Court, dated January 4, 2017, Defendants stated that the "allegedly infringing **labels**" of the "accused candles" were "**designed** and developed" in South Carolina and that the "employees (and documents) involved with the

**design** and the development of the accused candles" were also based in South Carolina. [56.1 ¶ 40]  In Defendants' letter to the Court, dated January 4, 2017, Defendants also stated that "[b]ecause the relevant decisions regarding use of the photograph in question on **the accused candles' <u>labels</u>** were made by MVP employees in South Carolina, and all documentation regarding the same as well as the **development of the <u>label</u>** occurred in South Carolina, MVP's party witnesses, i.e. the employees involved in the **design and development of the <u>label</u>**, as well as the initial purchase and licensing of the photograph at issue, are all located in South Carolina." [56.1 ¶ 41]

In Defendant's letter to Plaintiff, dated September 20, 2018, Defendants stated that the License Agreement to which MVP Group is a party . . . provides the right to reproduce Mr. Bechler's photograph on the **<u>labels</u>** that attach to the MVP candle bars." [56.1 ¶ 42]

In Defendants' answer, Defendants admitted that MVP incorporated a version of the Photograph in "**<u>MVP's labels</u>** for its 'Tropical Nectar' fragrance line of 'Colonial Candle' brand of candles." [56.1 ¶ 43]  In Defendants' answer, "Defendants admit that BBB has placed MVP products with **<u>labels</u>** that incorporate a photograph for sale on its website." [56.1 ¶ 45]  In Defendants' answer, Defendants admit that Exhibit D to the Complaint depicts screenshots of BBB's website pages showing Colonial Candle Tropical Nectar candle products [56.1 ¶ 46]

**<u>The Customary Industry Distinction Between a "Label" and "Packaging"</u>**

The term "packaging" refers to materials used to enclose a product, such as boxes, containers, bags, cases, holders, receptacles or other vessels used to transport or protect a product from its external environment and is intended to be taken out of or off

the physical product and not affixed to a product. [56.1 ¶ 48]

The term "labeling" or "labels", in contrast to "packaging", refers to a piece of paper, plastic film, cloth, metal or other material affixed to a container or product used to promote and identify a particular product for identification or description purposes. A label is intended to be a part of the finished product and not to be taken off. [56.1 ¶ 49]

The primary distinction between "packaging" and "labeling" is that packaging is not affixed to the product and used to protect or transport a product, whereas labeling is affixed to the product and used as an identification and/or design function which allows consumers to associate to a specific product with a particular brand name, mark or concept. [56.1 ¶ 50]

The Photograph at issue in this case of a hibiscus flower is used as a label and not as packaging because it is affixed to the products and used for identification and design purpose. [56.1 ¶ 51] The candles marketed by Defendant are either embedded into a glass jar or are freestanding candles with no glass jar. [56.1 ¶ 52]

With respect to products where the candle is embedded in a glass jar, it was Defendants' intent for consumers to burn the candle whilst embedded in their respective glass jar. [56.1 ¶ 53] With respect to products where the candle is embedded in a glass jar, it is impossible for a consumer to remove the candle from the glass jar without destroying the candle and thereby depriving the consumer of the candle's utility. [56.1 ¶ 54]

**The Plain and Ordinary Distinction Between "Label" and "Packaging"**

Merriam-Webster Online dictionary, www.merrian-webster.com, defines the word "packaging" as "the enclosing of something in a container or covering" or

"material used to enclose or contain something." [56.1 ¶ 55]

Merriam-Webster Online dictionary, www.merrian-webster.com, defines the word "package" as a "wrapped or sealed case containing an item or set of items." Synonyms for the word "package" include bundle, pack, packet, parcel as well as array, assemblage, band, bank, batch, battery, block, bunch, clot, clump, cluster, clutch, collection, constellation, group, grouping, huddle, knot, lot, muster, parcel, passel, set, suite. [56.1 ¶ 56]

Merriam-Webster Online thesaurus, www.merrian-webster.com, provides that words which are related to "package" include bag, poke, pouch, sack, bale, box, container, crate, accumulation, aggregate, aggregation, conglomeration, agglomeration, assortment, hodgepodge, jumble, miscellany, mixture, odds and ends, sundries, variety cycle, run, series, suit. [56.1 ¶ 57]

Merriam-Webster Online dictionary, www.merrian-webster.com, defines the word "label" as "a slip (as of paper or cloth) inscribed and affixed to something for identification or description", "written or printed matter accompanying an article to furnish identification or other information", "a descriptive or identifying word or phrase", "the brand name of a retail store selling clothing, a clothing manufacturer, or a fashion designer." Synonyms for the word "label" include marker, tag, ticket, baptize, call, christen, denominate, designate, dub, entitle, name, nominate, style, term, title. [56.1 ¶ 58]

Merriam-Webster Online thesaurus, www.merrian-webster.com, provides that words related to the word "label" include caption, legend, brand, emblem, hallmark, logo, mark, symbol, trademark, badge, decal,  plaque,  seal,  stamp, sticker, caption,

earmark, hallmark, stamp call, designate, identify, name, tab, entitle, style, term, title, brand, stigmatize, tag, denote, specify miscall, misname, mistitle, code-name, nickname, rechristen, relabel, rename surname. [56.1 ¶ 59]

According to Merriam-Webster Online dictionary and thesaurus, www.merrian-webster.com, the word "packaging" is neither synonymous with nor related to the word "label." [56.1 ¶ 60] According to Merriam-Webster Online dictionary and thesaurus, www.merrian-webster.com, the word "package" is neither synonymous with nor related to the word "label." [[56.1 ¶ 61] According to Merriam-Webster Online, www.merrian-webster.com, the word "label" is neither synonymous with nor related to the word "packaging." [56.1 ¶ 60] According to Merriam-Webster Online, www.merrian-webster.com, the word "label" is neither synonymous with nor related to the word "package." [56.1 ¶ 61]

## <u>LEGAL STANDARD</u>

When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (citing *Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir. 2003)). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors ones side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996); *see also Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("In applying th[e]

[summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); *United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994) (same).

"In ruling on a motion for summary judgment, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

## ARGUMENT

### POINT I: MVP EXCEEDED THE SCOPE OF THE iSTOCK LICENSE BY USING THE PHOTOGRAPH AS A DESIGN MARK ON A PRODUCT LABEL

While "it is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work, *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), "[t]he burden of proving that a license exists falls on the party invoking the defense." *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013) (citing *Graham*, 144 F.3d at 236).

It is well-established that a copyright infringement claim lies where defendant's challenged use exceeds the scope or duration of a license. *See*, *e.g., Microsoft Corp. v. Harmony Computers & Elecs., Inc.*, 846 F. Supp. 208, 214 (E.D.N.Y. 1994) ("plaintiff's claim that defendants exceeded the scope of its license agreements states a claim for copyright infringement rather than breach of contract"); *Marshall v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) ("Case law in this Circuit indicates that a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."); *Leutwyler v. Royal Hashemite Court of Jordan*,

184 F. Supp. 2d 303 (S.D.N.Y. 2001); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225 (S.D.N.Y. 2000).

Here, there is no dispute that MVP obtained a license to use the Photograph by entering into and agreement with third-party iStock. However, a plain and ordinary reading of the iStock License Agreement demonstrates that MVP exceeded the scope of the defined license on two grounds: (1) MVP used the Photograph as a label affixed to the candle product; and (2) MVP used the Photograph as part of a design mark to identify the candle product so as to distinguish it from other candle products.

As further demonstrated below, use of the Photograph as a product label was not expressly authorized by the "Permitted Uses" provision set forth in the iStock License Agreement. Further, use of the Photograph as a design mark was expressly prohibited by the "Prohibited Uses" provision of that Agreement. Accordingly, Defendants' affirmative defense of license should be dismissed as a matter of law. If not dismissed, then a jury should decide the question as to whether "product packaging" can be construed to include a label used to identify a product.

A.    **THE ISTOCK LICENSE AGREEMENT DOES <u>NOT</u> EXPRESSLY PERMIT USE OF THE PHOTOGRAPH AS A "LABEL" AFFIXED TO A PRODUCT**

"Principles of contract law are generally applicable in the construction of copyright . . . licenses and other transfers of rights." *Leutwyler v. Royal Hashemite Court of Jordan*, 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) (citing 3 *Nimmer on Copyright* § 10.08 (2001)); *see also Great Minds v. Fedex Office & Print Servs., Inc.,* 886 F.3d 91, 94 (2d Cir. 2018) ("Copyright licenses are generally construed according to principles of contract law.")

District courts are "not free to rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction." *Bank of New York*

*Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 307 (2d Cir. 2016) (citing

*Slamow v. Del Col,* 174 A.D.2d 725, 726, 571 N.Y.S.2d 335, 336 (2d Dep't 1991)); *see also*

*Moses v. Apple Hosp. REIT Inc.*, No. 14CV3131DLISMG, 2016 WL 8711089, at *6 (E.D.N.Y.

Sept. 30, 2016) ("[W]e have stated on a number of occasions that we do rewrite contracts

to insert provisions that have been omitted by the parties."); *In re World Trade Ctr. Disaster Site

Litig.,* 2014 WL 2565821, at *6 (2d Cir. June 9, 2014) ("Courts should be 'extremely reluctant,' .

. . to imply a term that 'the parties have neglected to specifically include.'"); *Charter Realty &

Dev. Corp. v. New Roc Assocs., L.P.,* 293 A.D.2d 438, 439, 739 N.Y.S.2d 456 (N.Y.App. Div.2d

Dep't 2002) ("[A] court should not, under the guise of contract interpretation, imply a term which

the parties themselves failed to insert . . . ."); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 92

(S.D.N.Y. 1974) ("A court may not rewrite into a contract conditions the parties did not insert.

The intent of the parties must be distilled from the terms of the written agreement itself.").[1]

Here, Defendants have repeatedly admitted throughout the course of this litigation that

they used the Photograph as part of product "label" [56.1 ¶¶ 40-47]  Even the answer admits that

the Photograph was used in "**MVP's labels** for its 'Tropical Nectar' fragrance line of 'Colonial

Candle' brand of candles." [Answer ¶ 15 (Dkt. #13)] (emphasis added).

Notwithstanding, Defendants' primary argument in support of their license defense is that

use of the Photograph as a label should be *construed* by the Court as "product packaging", which

constitutes a Permitted Use under the iStock License Agreement.  The problem with this

---

[1] New York law applies to the Court's interpretation of the iStock License Agreement. *See American Fuel Corp. v. Utah Energy Development Co., Inc.,* 122 F.3d 130, 134 (2d Cir.1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").  Even if the federal laws of Canada apply, as per section 10(f) of the iStock License Agreement [Dkt. #38-7, ¶10(f)] there is reason to believe that such laws would be distinct in terms of the general contractual principles adopted in this forum.

argument is that it asks the Court to rewrite the iStock License Agreement to insert language that does not appear anywhere within the four corners of that agreement.

Simply put, use of the Photograph as a "label" is not expressly authorized by the Permitted Use section of the iStock License Agreement. [56.1 ¶ 33] Indeed, the word "label" is nowhere to found anywhere within the four corners of the iStock License Agreement. [56.1 ¶¶ 34-35] Having failed to show that Defendants' use of the Photograph as a label was expressly authorized, Defendants ask the Court to reconstruct the contract by reading the word "label" into the term "product packaging."

However, the Court is not authorized to grant Defendant's request. *See Matter of Tillim v. Fuks*, 221 A.D.2d 642, 643, 634 N.Y.S.2d 508 (2d Dept. 1995) ("The words and phrases used in an agreement <u>must</u> be given their plain meaning so as to define the rights of the parties.") (underline added); *see also Bar–Ayal v. Time Warner Cable Inc.,* No. 03 CV 9905, 2006 WL 2990032, at * 14 n. 25 (S.D.N.Y. Oct.16, 2006) (a court is "not free to alter the plain terms of an agreement or to strain language beyond its reasonable and ordinary meaning."). *Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 567 (2d Cir. 2011) ("it is common practice for the courts of [New York] State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." (citations omitted).

Here, reference to any common dictionary reveals that the words "label" and "package" (or "packaging") are <u>not</u> synonymous nor interchangeable – not even close. These words carry entirely different meaning and import, such that the Court would need to cram a square peg into a round hole in order to make them synonymous. [56.1 ¶¶ 55-63]

According to Merriam-Webster Online dictionary and thesaurus, [www.merrian-](www.merrian-webster.com)[webster.com](www.merrian-webster.com), the word "packaging" is neither synonymous with nor related to the word "label."

[56.1 ¶ 60]  According to the dictionary, the purpose of a "label" is to identify or describe something.  [56.1 ¶ 58]  In contrast, "packaging" merely refers to "material used to enclose or contain something."  [56.1 ¶ 55]

From a retail industry standpoint, experienced practitioners also distinguish between the terms.  The term "packaging" refers to materials used to enclose a product, such as boxes, containers, bags, cases, holders, receptacles or other vessels used to transport or protect a product from its external environment and is intended to be taken out of or off the physical product and not affixed to a product.  [56.1 ¶ 48]

In contrast to "packaging", the term "labeling" or "labels" refers to a piece of paper, plastic film, cloth, metal or other material affixed to a container or product used to promote and identify a particular product for identification or description purposes.  A label is intended to be a part of the finished product and not to be taken off. [56.1 ¶ 49]

The primary distinction between "packaging" and "labeling" is that packaging is not affixed to the product and used to protect or transport a product, whereas labeling is affixed to the product and used as an identification and/or design function which allows consumers to associate to a specific product with a particular brand name, mark or concept. [56.1 ¶ 50]

Defendants ask the Court to abandon the plain separate meaning of the words "packaging" and "label", and to discount the distinctions made by industry professionals. Instead, Defendants relies on a supposed definition of "product packaging" derived from a single district court case.  See *Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123(JFB)(GRB), 2016 WL 929266, at *1 (E.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, No. 15CV2123JFBGRB, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016).  However, *Eliya* has misconstrued the Second Circuit case to which it cites, <u>*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),*</u> 71

F.3d 996, 1005 (2d Cir. 1995). *Knitwaves* does not state that that the term "product packaging" includes labels. Instead, it defines "trade dress" to include both a "label" and a "package."[2]

But the iStock Photo License at issue here makes no reference whatsoever to the term "trade dress" (which according to the Second Circuit includes both "package" and "label", Id.). Instead, the contract merely refers to "product packaging". The fact that the Second Circuit has already distinguished between the terms "label" and "package" should be sufficient, in and of itself, to defeat Defendants' motion for summary judgment on the license defense.

**B. THE iStock LICENSE EXPRESSLY PROHIBITS USE OF THE PHOTOGRAPH AS PART OF A "DESIGN MARK" (I.E., TO IDENTIFY OR DISTINGUISH THE PRODUCT IN COMMERCE)**

Defendants' license defense fails on the alternative ground that MVP used the Photograph as part of a "design mark" to identify and distinguish the Tropical Nectar Scented Candles. Such use is expressly prohibited by the iStock License. [56.1 ¶ 38] Indeed, a cursory look at the candles reveals that the Photograph is prominently featured directly below the Colonial Candle logo and is the only feature that would distinguish the product from other scented candles marketed by Colonial Candle (or other generic candles). [Complaint, Dkt. #1-4] Plainly, such use constitutes a design mark and is therefore prohibited and outside the scope of the Standard License. *See Juicy Couture, Inc. v. Bella Int'l Ltd.,* 930 F. Supp. 2d 489 (S.D.N.Y. 2013) (assessing a design mark based on its distinctiveness)

---

[2] "While "trade dress" at one time "referred only to the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements," the concept "has taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 31 (2d Cir.1995). Trade dress, thus, is " 'essentially [a product's] total image and overall appearance.' " *Id.* (quoting *Two Pesos, Inc., v. Taco Cabana, Inc.,* 505 U.S. 763, 764 n. 1, 112 S.Ct. 2753, 2755 n. 1, 120 L.Ed.2d 615 (1992)). *See also Restatement (Third) of Unfair Competition* § 16 & cmt. a (1995). *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),* 71 F.3d 996, 1005 (2d Cir. 1995).

**POINT II:**     **IN THE EVENT THE COURT FINDS THE ISTOCK AGREEMENT AMBIGUOUS, THEN SUMMARY JUDGMENT MUST BE DENIED**

As is generally the case with contracts, a court may interpret a contract as a matter of law, where the language of the document is unambiguous. *Bourne v. Walt Disney Co.,* 68 F.3d 621, 629 (2d Cir.1995). However, a contract may be deemed ambiguous where its language is susceptible to multiple reasonable interpretations. *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 391 (S.D.N.Y. 2014), *aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 725 F. App'x 4 (2d Cir. 2018) (citing *Brad H. v. City of New York,* 17 N.Y.3d 180, 186, 928 N.Y.S.2d 221, 951 N.E.2d 743 (N.Y.2011)). When a contract is ambiguous and there is relevant extrinsic evidence as to the parties' intent, the proper interpretation of the disputed language becomes a question of fact for the jury. *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992).

Here, there exist only two reasonable scenarios, both of which compel the Court's denial of Defendants' summary judgment motion.  Either the Court determines that use of the Photograph as a product label and/or design mark is outside the scope of the iStock Licensing Agreement as a matter of law, see Point I, *supra* (which would mandate dismissal of the license defense) or the Court finds that the iStock Licensing Agreement is susceptible to multiple reasonable interpretations, one of which is that the term "product packaging" includes labels and the other is that it does not.

If the Court finds that the term "product packaging", as used n section 3(c) of the iStock License Agreement, is subject to more than one reasonable interpretation, then the proper disposition is to deny summary judgment and send this case to a jury. At trial, MVP's representatives and representatives of iStock will be able to testify as to their understanding of

the term "product packaging", along with any expert testimony that the parties may proffer concerning the common and/or industry distinction between "packaging" and "labels."

**POINT III:**   **DISTRIBUTION OF THE PHOTOGRAPH BY DEFENDANTS CONSTITUTES A VOLITIONAL ACT TO SUSTAIN A CLAIM OF DIRECT INFRINGEMENT**

Defendants Bed Bath, Wayfair and Jet collectively argue that they cannot be held liable for direct infringement because they distributed the allegedly infringing products on their websites (or via retail outlets) and that distribution does not constitute a "volitional act." This argument is meritless.

Plaintiff has an exclusive right to distribute his copyrighted material under section 106(3) of the Copyright Act. 17 U.S.C. §106(3). As a matter of law, the violation of that distribution right exposes Defendants Bed Bath, Wayfair and Jet to liability for direct infringement. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 147 (S.D.N.Y. 2009) (citing *New York Times Co., Inc. v. Tasini,* 533 U.S. 483, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001) and distinguishing *Cartoon Network LLLP v. CSC Holdings, Inc.,* 536 F.3d 121 (2d Cir.2008).

Accordingly, summary judgment should denied concerning Defendants Bed Bath, Wayfair and Jet, all of which obviously functioned as major retail distributors marketing directly to the public rather than mere "passive conduits." [Complaint, Ex. C-E]

**POINT IV:**   **DEFENDANTS' MOTION FOR FEES SHOULD BE DENIED**

Section 505 of the Copyright Act states that:

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

As the plain text of the statute makes clear, "[a]n award of attorney's fees and costs is not automatic but rather lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995)). The touchstone consideration in the awarding of fees or costs under § 505 is whether doing so furthers the purposes of the Copyright Act. *See Matthew Bender & Co. v. W Pub. Co.*, 240 F.3d 116, 124-25 (2d Cir. 2001) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,535 n.19 (1994)); *see also* Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.10[D][2] ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act . . .")[3]

"[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001). The Second Circuit accords the objective reasonableness factor "substantial weight" in determinations whether to award attorneys' fees. *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). The "emphasis on objective reasonableness is firmly rooted in *Fogerty's* admonition that any factor a court considers in deciding whether to award attorneys' fees must be 'faithful to the purposes of the Copyright Act.'" *Matthew Bender & Co.*, 240 F.3d at 122 (citing *Fogerty*,

---

[3] In *Fogerty*, the Supreme Court cautioned that "[t]here is no precise rule or formula for making [attorneys' fees] determinations," but nonetheless identified "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" as relevant factors. *Fogerty*, 510 U.S. at 534 n.19; s*ee also Matthew Bender & Co.*, 240 F.3d at 21 (applying the *Fogerty* factors).

510 U.S. at 534 n.19). As such, awards of attorneys' fees under § 505 are not justified where a litigant's copyright claims are deemed objectively reasonable. *Id.* (reversing award of attorneys' fees on grounds that the legal position asserted was objectively reasonable).[4]

Claims are objectively unreasonable when they "have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *see also Silberstein v. Fox Entm 't Grp., Inc.*, 536 F. Supp. 2d 440,444 (S.D.N.Y. 2008) ("the courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable") (quoting *Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*, 96-cv-4126 (RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)).[5] The "mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) (citation, quotation marks, and ellipsis omitted).

Here, Plaintiff has advanced an objectively reasonable claim under the Copyright Act because his claim has both factual and legal support. To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).

---

[4] *See also Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730-31 (7th Cir. 1998) (vacating award of fees because, inter alia, losing party's claims were objectively reasonable); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998) (affirming denial of fees because copyright holder's "claims were neither frivolous nor objectively unreasonable); *EMI Catalogue P'ship v. CBS/Fox Co.*, 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (holding that copyright owner's claim was "not so objectively unreasonable as to justify" an award).

[5] Similarly, a complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,325 (1989); *see also Hallfordv. Fox Entm't Grp., Inc.*, 12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) (an argument "is frivolous when there is indisputably absent any factual or legal basis" for it); *Matthew Bender & Co.*, 240 ("an objectively unreasonable argument is not necessarily frivolous or made in bad faith." ).

With respect to the first element, Plaintiff has alleged that he owns a valid copyright to the Photograph. [Compl. ¶¶ 10-12] Defendant has not argued otherwise. With respect to the second element, it is undisputed that Defendants copied the Photograph that is at issue in this litigation. The parties are simply disputing the scope of a written license. Defendant asks the Court to rewrite the contract to insert the word "label" and to discount the fact that the Photograph was used as part of a design mark to identify and distinguish the product in the marketplace. Plaintiff has proffered hard evidence showing that the terms "label" and "packaging" are distinct, from both an industry standard and according to their plain and ordinary meaning. Even if the Court construes the term "product packaging" to include labels, such conclusion does not render Plaintiff's arguments objectively unreasonable. Plainly, if an ordinary dictionary distinguishes between such terms, then so can Plaintiff without being penalized with crushing financial liability.

"It generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008). Here, an award of fees to Defendant will frustrate the purposes of the Copyright Act by encouraging the unauthorized use of content by sophisticated retail companies who fail to properly interpret the scope of stock photography agreements.

"The primary objective of copyright is not to reward the labor of authors, but "[t]o promote the Progress of Science and useful Arts.'' *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 349-350, 11 S.Ct. 1282, 1290, 113 L.Ed. 2d 328 (1991); see also *Davis v. Blige*, 505 F.3d 90, 105 (2d Cir. 2007) ("The core purpose of the copyright law is 'to secure a fair return for an author's creative labor' and thereby 'to stimulate artistic creativity for

the general public good.'") (citations omitted); *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 147 (2d Cir. 1984) ("The principle purpose of the [Copyight Act] is to encourage the origination of creative works by attaching enforceable property rights to them.").

Here, an award of attorneys' fees would only encourage retailers to exploit the rights of photographers by failing to secure a proper license to mass market their products. Such practice, if condoned, will ultimately diminish the quantity and variety of content available to the public. *See Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002) ("It would be inconsistent with the Copyright Act's purposes to endorse Corel's improper appropriation of Berkla's product by awarding fees.").

**POINT V:     DEFENDANT HAS FAILED TO PRESENT ANY EVIDENCE OF BAD FAITH TO SUPPORT SANCTIONS UNDER 28 U.S.C. §1927**

Defendant also moves for sanctions under section 1927 which provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

18 U.S.C. § 1927.

In *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986), the Second Circuit emphasized the high threshold of improper conduct that must be present in order to justify an award of attorneys' fees pursuant to § 1927. The Second Circuit notes that it has "declined to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes'" and "a high degree of specificity in the factual findings of [the] lower courts." *Id.* at 1272. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114–15 (2d Cir. 2009) ("absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is

unjustified"); *Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 38 (2d Cir.1995) ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.") (internal quotation marks omitted).

No such high degree of specificity is possible in the present case. Defendant has failed to show that Plaintiff's complaint is frivolous or motivated by an improper purpose, such as delay or harassment. In fact, there is ample evidence showing that Defendant committed copyright infringement by exceeding the scope of the license through mass marketing the copyright as a product label and design mark, neither of which were permitted by the iStock License.

Nor do the facts of this case satisfy the § 1927 standard set forth in *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71 (2d Cir.2000). There, the district court identified eleven different instances of sanctionable behavior by the attorney. *Id.* at 77–78. The Second Circuit found that sanctions under § 1927 were still not warranted. *Id.* at 82. It is clear that whatever the Defendant complains of here pales in comparison to the facts in *Revson*. *See Torah Soft Ltd. v. Drosnin,* 224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ("The conduct of attorneys here, even if it could be faulted in any respect, would still be far from the threshold that Revson establishes for imposing sanctions.").

## CONCLUSION

Based on the foregoing, the Court should DENY Defendants' Motion for Summary Judgment, Fees and Sanctions in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**/richardliebowitz/**
Richard Liebowitz

11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowitzlawfirm.com

*Counsel for Plaintiff*