**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

SHANE BECHLER,

        Plaintiff,

    v.

MVP GROUP INTERNATIONAL, INC., BED BATH
& BEYOND INC., WAYFAIR LLC, and JET.COM,
INC.

        Defendants.

Civil Action No.
1:16-cv-08837-LAP

---

**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FOR**
**COSTS, ATTORNEY'S FEES, AND SANCTIONS**

BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Tel. No. (315) 218-8000

*Attorneys for Defendants MVP Group International,*
*Inc., Bed Bath & Beyond Inc., and Wayfair LLC*

INGRAM YUZEK GAINEN CARROLL &
BERTOLOTTI, LLP
150 East 42nd Street, 19th Floor
New York, New York 10017
Tel. No. (212) 907-9600

*Attorneys for Defendant Jet.com, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
      PLAINTIFF'S FIRST CAUSE OF ACTION .................................................................... 2

II.   DEFENDANTS ARE ENTITLED TO COSTS, ATTORNEYS' FEES AND
      SANCTIONS ................................................................................................................... 7

CONCLUSION............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arista Records LLC v. USENET.com,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009).......................................................................6

Baker v. Urban Outfitters, Inc.,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006).......................................................................9

Beazley Ins. Co. v. Ace Am. Am. Ins. Co.,
  197 F. Supp. 3d 616 (2d Cir. 2016) ......................................................................3, 4

Bourne v. Walt Disney Co.,
  68 F.3d 621 (2d Cir. 1995)........................................................................................3

Cartoon Network LP, LLP v. CSC Holdings, Inc.,
  536 F.3d 121 (2d Cir. 2008)......................................................................................6

Eliya, Inc. v. Kohl's Corp.,
  No. CV 15-2123, 2016 U.S. Dist. LEXIS 22085 (E.D.N.Y. Feb. 22, 2016)............4

EnergyBrands, Inc. v. Beverage Mktg. USA, Inc.,
  No. 02 Civ. 3227, 2002 U.S. Dist. LEXIS 7763 (S.D.N.Y. May 1, 2002)...............4

Goodman v. Universal Beauty Products, Inc.,
  No. 17 Civ. 1716 (KBF), 2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018)...................4

Graham v. James,
  144 F.3d 229 (2d Cir. 1998)......................................................................................3

Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,
  252 F.3d 608 (2d Cir. 2001)......................................................................................4

Juicy Couture, Inc. v. Bella Int'l, Ltd.,
  930 F. Supp. 2d 489 (S.D.N.Y. 2013).......................................................................5

Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),
  71 F.3d 996 (2d Cir. 1997)........................................................................................4

Mondragon v. Nosrak LLC,
  No. 19-cv-01437 (D. Co. May 11, 2020)..................................................................8

Smith v. Barnesandnoble.com, LLC,
  839 F.3d 163 (2d Cir. 2016)...................................................................................2, 4

Viva Video, Inc. v. Cabrera,
    9 F. App'x 77, 80 (2d Cir. 2001) ..............................................................................8

Waldman v. Riedinger,
    423 F.3d 145 (2d Cir. 2005)....................................................................................3

Wolk v. Kodak Imaging Network, Inc.,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012) aff'd, 569 Fed. Appx. 51 (2d Cir. 2014) ......................7

**Statutes**

17 U.S.C. § 505 .............................................................................................................1, 7

28 U.S.C. § 1927 ...........................................................................................................1, 7

Copyright Act.............................................................................................................. *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 56 ......................................................................1

Defendants MVP Group International, Inc. ("MVP"), Bed Bath & Beyond Inc. ("BBB"), Wayfair LLC ("Wayfair") (collectively, the "MVP Defendants"), and Jet.com, Inc. ("Jet") (collectively, "Defendants"), by and through their respective undersigned counsel, respectfully submit this reply memorandum of law in further support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for costs, attorneys' fees, and sanctions pursuant to 17 U.S.C. § 505, 28 U.S.C. § 1927, and the Court's inherent power.

## PRELIMINARY STATEMENT

Defendants established in their moving papers that Plaintiff's Copyright Act claim against MVP fails as a matter of law because MVP's use of the Photograph[1] was expressly permitted by the iStock License. Defendants also established that Plaintiff's Copyright Act claims against BBB, Wayfair, and Jet fail as a matter of law both because those claims are predicated on MVP's purported infringement and because BBB, Wayfair, and Jet are service providers who serve as mere passive conduits.

In response, Plaintiff makes several key admissions that are directly contrary to the materially false allegations in the Complaint, and which confirm Defendants' entitlement to judgment as a matter of law, including that: Plaintiff permitted iStock to license the Photograph for a fee; MVP downloaded the Photograph from iStock's website and obtained a valid iStock License; and MVP did not download the Photograph from "FineArtsAmerica.com." Plaintiff's Response to Rule 56.1 Statement ("Pl. Rule 56.1 Statement") ¶¶ 6-8, 10. In contravention of his own Complaint, Plaintiff now argues that this case is merely a dispute about the scope of the iStock License, and he attempts to manufacture a question of fact by offering in support of that argument

---

[1] To the extent capitalized terms are not expressly defined herein, those terms retain the same meaning ascribed to them in Defendants' Joint Memorandum of Law in Support of Defendants' Motion for Summary Judgment and for Costs, Attorneys' Fees, and Sanctions. Dkt. No. 50.

immaterial extrinsic evidence. That immaterial extrinsic evidence should be wholly disregarded by the Court, however, because the iStock License unambiguously permits MVP's use of the Photograph.

Defendants also established in their moving papers that, as a result of Plaintiff's frivolous and vexatious conduct in commencing and prosecuting this action, Defendants are entitled to costs, attorneys' fees, and sanctions against Plaintiff and his attorney. Plaintiff's responsive papers confirm that the Complaint was predicated on several materially false allegations and that Plaintiff's insistence on nevertheless prosecuting this action constitutes frivolous and bad faith conduct.

In sum, Defendants have established their entitlement to judgment as a matter of law dismissing Plaintiff's remaining claims against them, with prejudice, as well as Defendants' entitlement to costs, fees, and sanctions against Plaintiff and Plaintiff's attorney.

<u>**ARGUMENT**</u>

**I.** <u>**DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FIRST CAUSE OF ACTION**</u>

Defendants established in their moving papers that Plaintiff's Copyright Act claim fails as a matter of law because MVP validly licensed the Photograph from iStock, and MVP's use of the Photograph on product packaging fell squarely within the uses permitted by the iStock License. <u>See</u> <u>Defendants' Joint Memorandum of Law in Support of Motion for Summary Judgment</u> ("<u>Defs. Br.</u>") at 7-11. In response, Plaintiff concedes that there is "no dispute" regarding the validity of the iStock License, and argues instead that MVP purportedly exceeded the scope of that License. <u>Plaintiff's Opposition Memorandum of Law</u> ("<u>Pl. Br.</u>") at 9. Because "the existence of the license is undisputed, and the only contested issue is its scope, the copyright owner [(i.e., Plaintiff)] bears the burden of proving that the defendant's conduct was unauthorized under the license." <u>Smith v.</u>

Barnesandnoble.com, LLC, 839 F.3d 163, 167 (2d Cir. 2016) (citing Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998)).  Plaintiff fails completely to satisfy his burden.

Plaintiff argues first that while the iStock License permits the use of the Photograph on "product packaging," MVP's use of the Photograph on "labels" adhered to glass jars holding the subject candles did not fall within the meaning of "product packaging" under the License.  Pl. Br. at 9-13.  Plaintiff predicates this argument entirely on extrinsic evidence, principally the affidavit of an unrelated advertising executive and excerpts from Merriam-Webster Online dictionary.  The iStock License is unambiguous, however, and Plaintiff's proffered extrinsic evidence should not be considered by the Court.

As Plaintiff admits, "Copyright disputes involving only the scope of the alleged infringer's license present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the defendant's activities."  Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995).  "Whether a contract term is ambiguous is assessed from the perspective of a reasonably intelligent person . . . who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  Beazley Ins. Co. v. Ace Am. Am. Ins. Co., 197 F. Supp. 3d 616, 623 (2d Cir. 2016) (internal quotation marks and citation omitted).  As such, "evidence of custom and usage is properly considered prior to the evaluation of extrinsic evidence," id., which "is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face,"  Waldman v. Riedinger, 423 F.3d 145, 150 (2d Cir. 2005) (internal quotation marks and citation omitted).  As particularly relevant here, where the meaning of a term or phrase has been established in case law, that term is deemed unambiguous as a matter of law.  See Beazley Ins. Co., 197 F. Supp. 3d at 625-26 (holding that a disputed term had an unambiguous meaning as a matter of law because courts in multiple cases

assigned the term the same meaning) (citing <u>Hugo Boss Fashions, Inc. v. Fed. Ins. Co.</u>, 252 F.3d 608, 618-20 (2d Cir. 2001) (same)).

Courts within the Second Circuit have repeatedly defined the phrase "product packaging" in the intellectual property context as referring to "'the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements.'" <u>Eliya, Inc. v. Kohl's Corp.</u>, No. CV 15-2123, 2016 U.S. Dist. LEXIS 22085, at *9 (E.D.N.Y. Feb. 22, 2016) (quoting <u>Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)</u>, 71 F.3d 996, 1005 (2d Cir. 1997)); <u>see EnergyBrands, Inc. v. Beverage Mktg. USA, Inc.</u>, No. 02 Civ. 3227, 2002 U.S. Dist. LEXIS 7763, at *2 (S.D.N.Y. May 1, 2002) (describing sport drink bottle "product packaging" as including each drink's "label"). Plaintiff's contention that the court in <u>Eliya, Inc.</u> "misconstrued" the Second Circuit's decision in <u>Knitwaves, Inc.</u> is baseless. <u>Pl. Br.</u> at 12. The Second Circuit in <u>Knitwaves, Inc.</u> referred to a "label" as one of several product "packaging elements," and the aforementioned District Courts including, but not limited to, the court in <u>Eliya, Inc.</u>, expressly defined "product packaging" as including a product's "label." As such, the phrase "product packaging" in the iStock License unambiguously encompasses product "labels," and the immaterial extrinsic evidence that Plaintiff relies upon in his futile attempt to create a false dichotomy between those terms should be wholly rejected by the Court. <u>See Beazley Ins. Co.</u>, 197 F. Supp. 3d at 625-26.[2]

---

[2] And even if Plaintiff's extrinsic evidence is considered by this Court, the Photograph adhered to the glass jar would constitute "packaging" under Plaintiff's own definition of the term, which includes "the presentation of something . . . to the public in a way that is designed to be attractive or appealing." <u>Liebowitz Decl.</u> Ex. A. Moreover, Plaintiff's counsel is undoubtedly aware that any distinction between "packaging" and "label" based on the Photograph's ability to be detached from the product is a distinction without a difference. In <u>Goodman v. Universal Beauty Products, Inc.</u>, 17 Civ. 1716 (KBF), 2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018), where Plaintiff's counsel served as counsel for plaintiff, the Court repeatedly described the use of plaintiff's photograph directly affixed to defendant's shave gel product (as the Photograph is affixed to the candle's glass jar here) as use on the product's "packaging."

4

Because MVP's use of the Photograph falls squarely within the unambiguous definition of "product packaging," and was thus fully permitted by the iStock License, Plaintiff's claim against MVP fails as a matter of law.  Smith, 839 F.3d at 167.

Plaintiff argues next, in passing, that "MVP used the Photograph as part of a 'design mark' to identify and distinguish the Tropical Nectar Scented Candles," in contravention of the iStock License.  Pl. Br. at 13.  This argument is facially meritless.  As the lone case cited by Plaintiff in support of this erroneous argument makes clear, a "design mark" is akin to a stylized logo.  See Juicy Couture, Inc. v. Bella Int'l, Ltd., 930 F. Supp. 2d 489, 496 (S.D.N.Y. 2013).  As evidenced by the exhibits to the Complaint, the product packaging of candles made by MVP under the "Colonial Candle" brand utilizes a unique photograph that is functionally tied in some way to the scent of the respective candle.  See, e.g., Dkt. No. 1-5 at 2-3.  The "Colonial Candle" design mark remains the same on each "Colonial Candle"-brand candle, however, regardless of the scent of the particular candle or the photograph contained on that candle's product packaging.  See id.  Indeed, Plaintiff concedes that the Photograph appeared "below" – not within or as part of – the "Colonial Candle logo."  Pl. Br. at 13.  As such, the Photograph is merely decorative ornamentation and does not function in any way as part of the "Colonial Candle" design mark or any other Colonial Candle-brand mark.  See 8 Trademark Manual of Examination § 1202.03 ("Subject matter that is merely a decorative feature does not identify and distinguish the applicant's goods and, thus, does not function as a trademark.").

Defendants also established in their moving papers that Plaintiff's inability to establish direct copyright infringement against MVP mandates dismissal of Plaintiff's Copyright Act claims against BBB, Wayfair, and Jet.  Defs. Br. at 9-10.  Plaintiff effectively concedes in response that he cannot establish a claim of secondary liability against BBB, Wayfair, or Jet.  See Pl. Br. at 15.

Instead, Plaintiff argues that he "has an exclusive right to distribute his copyrighted material under section 106(3) of the Copyright Act," and that BBB, Wayfair, and Jet are subject to "liability for direct infringement" for purportedly violating that distribution right. Pl. Br. at 15. In other words, Plaintiff effectively argues for a strict liability standard. This argument fails as a matter of law for two key reasons.

First, and most critically, because MVP's use of the Photograph on the subject candle product packaging was permitted by the iStock License, Plaintiff did not have an exclusive copyright or distribution right with respect to those candles, and Plaintiff is thus barred as a matter of law from establishing that BBB, Wayfair, and Jet violated such non-existent rights. Indeed, in the lone case on which Plaintiff relies in support of this erroneous argument, Arista Records LLC v. USENET.com, 633 F. Supp. 2d 124 (S.D.N.Y. 2009), the court only reached the question of whether the distributing defendants breached plaintiff's distribution rights because, unlike here, the defendants conceded "that Plaintiffs own[ed] the copyrights in the subject sound records." Id. at 146.

Moreover, even if Plaintiff had protectible copyright or distribution rights in the candles – he does not – his claim for direct infringement against BBB, Wayfair, and Jet nevertheless fails as a matter of law. Contrary to the strict liability standard Plaintiff erroneously advances, it is well settled (including in the case law on which Plaintiff inexplicably relies) that "a finding of direct infringement of the right of distribution under §106(3) of the Copyright Act requires a showing that Defendants engaged in some volitional act sufficient to show that they actively engaged in distribution of the copies of Plaintiffs' copyrighted" material. Id. at 147-48; see Cartoon Network LP, LLP v. CSC Holdings, Inc., 536 F.3d 121, 130-31 (2d Cir. 2008). BBB, Wayfair, and Jet acted merely as passive conduits through which the purportedly infringing candles were sold, and it is

well settled that such passive service providers are not liable for direct copyright infringement. See, e.g., Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 742-43 (S.D.N.Y. 2012) (granting summary judgment of no liability for direct copyright infringement because "there is no evidence of volitional conduct" and "the display of copyrighted images on a defendant's website does not demonstrate volition") aff'd, 569 Fed. Appx. 51 (2d Cir. 2014). Plaintiff does not even purport to establish any volitional conduct on the part of BBB, Wayfair, or Jet, and his claim for direct infringement therefore fails as a matter of law.

Accordingly, Defendants have conclusively established that they are entitled to judgment as a matter of law dismissing Plaintiff's Copyright Act claims, with prejudice, and Plaintiff has failed completely to carry his burden of refuting that conclusion.

## II. DEFENDANTS ARE ENTITLED TO COSTS, ATTORNEYS' FEES AND SANCTIONS

Defendants also established in their moving papers that, as a result of the patently frivolous nature of Plaintiff's claims in this action and Plaintiff's insistence on nevertheless continuing to pursue those claims, Defendants are entitled to costs and attorney's fees from Plaintiff pursuant to Section 505 of the Copyright Act, and to costs, attorneys' fees and sanctions from Plaintiff's attorney pursuant to 28 U.S.C. § 1927 and the Court's inherent power. Defs. Br. at 11-15.

In response, Plaintiff argues principally that Plaintiff's claims against Defendants, and the way in which Plaintiff has prosecuted those claims, are neither objectively unreasonable nor frivolous. See Pl. Br. at 15-20. Plaintiff's own opposition papers, however, confirm the frivolity and objective unreasonableness of Plaintiff's claims, and of the way in which Plaintiff and his attorney have prosecuted those claims in this action.

In a brazen attempt to rewrite his own pleadings, Plaintiff now admits (as he must), that "there is no dispute that MVP obtained a license to use the Photograph by entering into and [sic] agreement with third-party iStock." Pl. Br. at 9. Of course, Plaintiff and his counsel knew, or should have known, before commencing this action that Plaintiff permitted iStock to license the Photograph. Yet the Complaint omits any mention of iStock and is predicated on the bedrock – and materially false – allegation that Plaintiff "has at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto." Complaint ¶ 12. Plaintiff admits that the MVP Defendants' attorney informed Plaintiff and his attorney of the existence of the iStock License in November 2016; nevertheless, Plaintiff continued to prosecute this action. See Pl. Rule 56.1 Statement ¶ 16.

Moreover, Plaintiff's revisionist attempt to characterize his claims as objectively reasonable by contending that "[t]he parties are simply disputing the scope of a written license," necessarily fails. Pl. Br. at 18. As established above, Plaintiff's argument that Defendants' actions fell outside the scope of the iStock License fail as a matter of law and are thus objectively unreasonable and frivolous. See, e.g., Viva Video, Inc. v. Cabrera, 9. F. App'x 77, 80 (2d Cir. 2001) (stating that claims are objectively unreasonable where they "have no legal or factual support" and noting that a plaintiff's inability to substantiate its copyright claims is sufficient grounds upon which a court may award fees to a prevailing defendant).

Finally, Plaintiff argues that an award of costs, fees, and sanctions against him and his attorney would contravene the objectives of the Copyright Act. This argument is meritless. Quite the opposite, costs, fees, and sanctions are necessary in this case to deter Plaintiff, his attorney[3],

---

[3] See, e.g., Mondragon v. Nosrak LLC, No. 19-cv-01437 (D. Co. May 11, 2020) (In deciding defendant's motion to dismiss for failure to prosecute, the U.S. Magistrate Judge concluded that

and similar plaintiffs and attorneys from flagrantly disregarding licenses that they permitted, and from "bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose." Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006). Where, as here, end users of artistic materials cannot rely on validly-purchased licenses without the impending threat of frivolous, vexatious, and costly litigation, the purposes of the Copyright Act are in grave danger.

Accordingly, as established in Defendants' moving papers and herein, Defendants are entitled to costs and attorneys' fees from Plaintiff, and to costs, attorneys' fees, and sanctions from Plaintiff's counsel.

## <u>CONCLUSION</u>

For the foregoing reasons and for the reasons established more fully in Defendants' moving papers, Defendants respectfully request that the Court (i) grant the instant motion for summary judgment and dismiss Plaintiff's remaining claims, with prejudice, and (ii) grant the instant motion for costs, attorneys' fees and sanctions against Plaintiff and his attorney and in favor of Defendants.

Dated:  May 27, 2020

BOND, SCHOENECK & KING, PLLC

By:   *s/ George R. McGuire*
     George R. McGuire
     Brendan M. Sheehan
One Lincoln Center
Syracuse, New York  13202
Telephone:  (315) 218-8515
Fax:  (315) 218-8415
E-mail:  gmcguire@bsk.com
     bsheehan@bsk.com
*Attorneys for the MVP Defendants*

---

"Mr. Liebowitz's continued practice of law represents a clear and present danger to the fair and efficient administration of justice" and issued sanctions against Attorney Liebowitz).

INGRAM YUZEK GAINEN CARROLL &
BERTOLOTTI, LLP

By:＿＿＿*s/ Mioko C. Tajika*＿＿＿＿＿
　　　　Mioko C. Tajika
150 East 42nd Street, 19th Floor
New York, New York  10017
Telephone:  (212) 907-9600
Fax:  (212) 907-9681
E-mail: mtajika@ingramllp.com

*Attorneys for Defendant Jet.com, Inc.*

10

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 27, 2020, I electronically filed the foregoing **Joint Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment and for Costs, Attorney's Fees, and Sanctions** with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to All Counsel.


*s/George R. McGuire*
George R. McGuire

11