UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
SHANE BECHLER,

                    Plaintiff,

-against-

MVP GROUP INTERNATIONAL, INC.,
BED BATH & BEYOND INC., WAYFAIR
LLC, JET.COM, INC.,

                    Defendants.
```

No. 16-CV-8837 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is the motion for summary judgment--as
well as costs, attorney's fees, and sanctions--filed by
Defendants MVP Group International, Inc. ("MVP"), Bed Bath &
Beyond Inc. ("BB&B"), Wayfair LLC ("Wayfair"), and Jet.com, Inc.
("Jet") (collectively, "Defendants").[1]  Plaintiff Shane Bechler
opposes the motion.[2]  For the reasons described below, the motion
is GRANTED.

---

    [1] (See Notice of Motion for Summary Judgment ("Notice"),
dated Apr. 15, 2020 [dkt. no. 46]; Joint Memorandum of Law in
Support of Defendants' Motion for Summary Judgment and for
Costs, Attorney's Fees, and Sanctions ("Defs. Br."), dated Apr.
15, 2020 [dkt. no. 50]; Joint Reply Memorandum of Law in Further
Support of Defendants' Motion for Summary Judgment and for
Costs, Attorney's Fees, and Sanctions, dated May 27, 2020 [dkt.
no. 52].)

    [2] (See Plaintiffs' [sic] Memorandum of Law in Opposition to
Defendant's [sic] Motion for Summary Judgment ("Pl. Br."), dated
Jan. 26, 2021 [dkt. no. 60].)  The Court observes that several
documents relevant to the instant motion are out of order on ECF
due to filing errors committed by both parties.

I.   **Background**

MVP designs and manufactures private label candles and related products under the brand name "Colonial Candle."[3]  Some of MVP's candles are sold online by BB&B, Wayfair, and Jet. (Pl. 56.1 ¶ 2.)  When selling its candles, MVP uses photographs on their labels, which are adhered to the glass jars containing the candles.  (Id. ¶ 5.)  At issue here is MVP's use of one photograph of a tropical hibiscus plant ("the Photo"), which Plaintiff took and permitted iStock to license for a fee.  (Id. ¶ 6.)  MVP downloaded the Photo from iStock's website and used the Photo for Colonial Candle's "Tropical Nectar" line of products.  (Id. ¶¶ 7, 9.)

To use the Photo, MVP entered into a Content License Agreement (the "iStock License"), which granted it "a perpetual, non-exclusive, non-transferrable worldwide license to use the

---

[3] (See Plaintiff's Response to Defendant's [sic] 56.1 Statement Pursuant to Local Rule 56.1 in in [sic] Opposition to Defendant's [sic] Motion for Summary Judgment and Plaintiff's Counter-Statement of Facts Under Local Rule 56.1 ("Pl. 56.1"), dated May 13, 2020 [dkt. no. 42], ¶ 1; Statement of Undisputed Material Facts, dated Apr. 15, 2020 [dkt. no. 51], ¶ 1.)  The Court also reviewed the declarations underlying the Rule 56.1 Statements.  (See Declaration of George R. McGuire, Esq. ("McGuire Decl."), dated Apr. 15, 2020 [dkt. no. 47]; Declaration of Matt Dillion, Esq., dated Apr. 13, 2020 [dkt. no. 48]; Declaration of Mioko C. Tajika in Support of Defendants' Motion for Summary Judgment and for Costs, Attorney's Fees, and Sanctions ("Tajika Decl."), dated Apr. 15, 2020 [dkt. no. 49]; Declaration of Richard Liebowitz, dated May 13, 2020 [dkt. no. 61]; Declaration of Joel Albrizio, dated May 13, 2020 [dkt. no. 62.].)

Content for the Permitted Uses."[4]  The iStock License defines

"Permitted Uses" to include, among other things, "advertising

and promotion projects, including printed materials [and]

product packaging."  (iStock License ¶ 3(c)(1).)  The iStock

License expressly states that "[u]nless the activity or use is a

Permitted Use, you cannot do it."  (Id. ¶ 2.)  The iStock

License warrants that uses in accordance with its terms do not

"infringe on any copyright," (id. ¶ 7(a)), but it cautions that

unauthorized uses "shall constitute infringement of copyright,"

(id. ¶ 3(a)).

This dispute centers on whether MVP's use of the Photo was

a "Permitted Use."  In November 2016, Plaintiff sued MVP as well

as several online retailers of its products, asserting claims

for copyright infringement and removal of copyright management

information.  (See Complaint, dated Nov. 14, 2016 [dkt. no. 1].)

Plaintiff alleged that MVP had unlawfully copied the Photo "from

FineArtsAmerica.com," (id. ¶ 14), which, as Plaintiff now

acknowledges, was simply not true, (see Pl. 56.1 ¶ 8).

Defendants, in correspondence with both Plaintiff and the Court,

repeatedly asserted that they possessed a valid license to use

the Photo in the manner alleged.  (See id. ¶¶ 16-18.)  Despite

---

[4] (Ex. 6 to McGuire Decl. ("iStock License"), dated Aug. 24,
2017 [dkt. no. 47-6], ¶ 2; see also Pl. 56.1 ¶¶ 10-11.)  The
parties agree that the Photo constitutes "Content."  (See id. ¶
27; Defs. Br. at 8.)

acknowledging that "[t]he existence of a license that allegedly covers the infringing use would be dispositive," Plaintiff continually refused Defendants' requests to dismiss the action. (Id. ¶¶ 19-20, 23-24.)  Instead, Plaintiff completely altered his theory of the case, although he did not amend his complaint or seek the Court's leave to do so.

With the parties at an impasse, the litigation largely stalled.  In September 2018, Defendants informed the Court of Plaintiff's refusals to dismiss his claims and requested to appear for a conference.  (Id. ¶ 21.)  Prior to that appearance, and despite Plaintiff's not having served any discovery requests, Defendants provided Plaintiff with a copy of the iStock License.  (Id. ¶ 22.)  Following a conference in October 2018, the case continued to languish; no discovery was taken, and there was no activity on the docket for nearly eighteen months.  (See Order, dated Mar. 11, 2020 [dkt. no. 31] at 1.) Things only picked up after the Court ordered counsel to confer and provide a status update.  (See Order, dated Mar. 2, 2020 [dkt. no. 29].)  Yet, Plaintiff still did not make any discovery requests.

Shortly after Plaintiff apprised the Court of the case's status, Defendants moved for summary judgment as well as costs, attorney's fees, and sanctions.  (See Notice at 1).  Before briefing was completed, Plaintiff agreed to dismiss voluntarily

4

the copyright management claim.  (See Joint Stipulation
Regarding Dismissal of Second Cause of Action, dated Apr. 17,
2020 [dkt. no 41].)  Thus, only the copyright infringement claim
remains for the Court's consideration.

## II.  Legal Standards

### a. Summary Judgment

Summary judgment is required where "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  FED. R. CIV.
P. 56(a).  The movant bears the burden to show the absence of a
dispute as to a material fact.  See Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  Where the non-moving party bears the
burden of proof at trial, the moving party may discharge its
summary judgment burden in "two ways: (1) by submitting evidence
that negates an essential element of the non-moving party's
claim, or (2) by demonstrating that the non-moving party's
evidence is insufficient to establish an essential element of
the non-moving party's claim."  Nick's Garage, Inc. v.
Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017).

In assessing the record, the Court "must view the evidence
in the light most favorable to the [non-moving] party," Tolan v.
Cotton, 572 U.S. 650, 657 (2014) (quotation marks omitted), and
"resolve all ambiguities and draw all reasonable inferences
against the movant," Caronia v. Philip Morris USA, Inc., 715

5

F.3d 417, 427 (2d Cir. 2013).  At the same time, "the mere
existence of <u>some</u> alleged factual dispute" is not enough to
prevent summary judgment--the dispute must be material.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  A
fact is "material" only if it "might affect the outcome of the
suit under the governing law."  <u>Id.</u> at 248.  Finally,
"conclusory statements or mere allegations are not sufficient to
defeat a summary judgment motion."  <u>Johnson v. Killian</u>, 680 F.3d
234, 236 (2d Cir. 2012) (per curiam) (alterations omitted).

###    b. **Copyright Infringement**

"The Copyright Act of 1976 grants copyright owners the
exclusive right to reproduce their copyrighted work, to prepare
derivatives of the work, and to sell copies of the work."
<u>Feingold v. RageOn, Inc.</u>, 472 F. Supp. 3d 94, 98 (S.D.N.Y. 2020)
(citing 17 U.S.C. § 106).  "To establish [direct] infringement,
two elements must be proven: (1) ownership of a valid copyright,
and (2) copying of constituent elements of the work that are
original."[5]  The Act also provides for secondary liability where
"a party that has not directly infringed a copyright . . . has
played a significant role in direct infringement committed by

---

[5] <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499
U.S. 340, 361 (1991).  "The word 'copying' is shorthand for the
infringing of any of the copyright owner's five exclusive rights
described in § 106."  <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d
110, 117 (2d Cir. 2010) (quotation marks omitted).

others." <u>Arista Records LLC v. Lime Grp. LLC</u>, 784 F. Supp. 2d
398, 422 (S.D.N.Y. 2011) (citing <u>Metro-Goldwyn-Mayer Studios
Inc. v. Grokster, Ltd.,</u> 545 U.S. 913, 930 (2005)).

Yet, "[a] copyright owner who grants a nonexclusive license
to use his copyrighted material waives his right to sue the
licensee for copyright infringement." <u>Latour v. Columbia Univ.</u>,
12 F. Supp. 3d 658, 661–62 (S.D.N.Y. 2014) (quoting <u>Graham v.
James</u>, 144 F.3d 229, 236 (2d Cir. 1998)). "However, the fact
that a party has licensed certain rights to its copyright to
another party does not prohibit the licensor from bringing an
infringement action where it believes the license is exceeded or
the agreement breached." <u>PaySys Int'l, Inc. v. Atos Se</u>, 226 F.
Supp. 3d 206, 215 (S.D.N.Y. 2016) (quoting <u>Tasini v. N.Y. Times
Co.</u>, 206 F.3d 161, 170 (2d Cir. 2000)).

"[C]opyright disputes involving only the scope of the
alleged infringer's license present the court with a question
that essentially is one of contract: whether the parties'
license agreement encompasses the defendant's activities."
<u>Yamashita v. Scholastic Inc.</u>, 936 F.3d 98, 105 (2d Cir. 2019)
(per curiam), <u>cert. denied</u>, 140 S. Ct. 2670 (2020). "Where, as
here, the existence of the license is undisputed, and the only
contested issue is its scope, the copyright owner bears the
burden of proving that the defendant's conduct was unauthorized

under the license." <u>Smith v. Barnesandnoble.com, LLC</u>, 839 F.3d 163, 167 (2d Cir. 2016).

The "[i]nterpretation of an agreement purporting to grant a copyright license is a matter of state contract law." <u>Random House, Inc. v. Rosetta Books LLC</u>, 150 F. Supp. 2d 613, 617–18 (S.D.N.Y. 2001).  Under New York law, the Court's task "is to ascertain the intention of the parties at the time they entered into the contract.  If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further." <u>Evans v. Famous Music Corp.</u>, 807 N.E.2d 869, 872 (N.Y. 2004).  "If, however, the contract language is ambiguous," it may be necessary to consider extrinsic evidence of intent, in which case "summary judgment is ordinarily not an appropriate remedy." <u>Turner Network Sales, Inc. v. DISH Network L.L.C.</u>, 413 F. Supp. 3d 329, 342 (S.D.N.Y. 2019).  "Evidence of trade practice and custom may assist a court in determining whether a contract provision is ambiguous in the first instance." <u>Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.</u>, 762 F.3d 165, 180 (2d Cir. 2014).

### c. <u>Costs & Attorney's Fees</u>

Under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." <u>Peter v. Nantkwest, Inc.</u>, 140 S. Ct. 365, 370 (2019).  Defendants invoke two statutes to overcome that

baseline presumption: (1) Section 505 of the Copyright Act and
(2) 28 U.S.C. § 1927.

### 1. **Section 505**

Under Section 505 of the Copyright Act, the Court enjoys
discretion to "allow the recovery of full costs by or against
any party," including "a reasonable attorney's fee."  17 U.S.C.
§ 505.  "This fee-shifting provision is symmetrical: costs and
attorney's fees are equally available to prevailing plaintiffs
and defendants."  Baker v. Urban Outfitters, Inc., 431 F. Supp.
2d 351, 357 (S.D.N.Y. 2006) (Preska, J.).  When determining
whether to award costs, the Court may consider, inter alia,
"frivolousness, motivation, objective unreasonableness (both in
the factual and in the legal components of the case) and the
need in particular circumstances to advance considerations of
compensation and deterrence."  Fogerty v. Fantasy, Inc., 510
U.S. 517, 534 n.19 (1994).  Among those "factors, objective
unreasonableness is one of the most significant factors and
. . . it is given substantial weight in determining whether fees
are warranted."  Baker, 431 F. Supp. 2d at 357.

### 2. **28 U.S.C. § 1927**

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so
multiplies the proceedings in any case unreasonably and
vexatiously may be required by the court to satisfy personally
the excess costs, expenses, and attorneys' fees reasonably

incurred because of such conduct."  That statute "does not
distinguish between winners and losers, or between plaintiffs
and defendants."  Roadway Exp., Inc. v. Piper, 447 U.S. 752, 762
(1980).  Rather, "[i]t is concerned only with limiting the abuse
of court processes."  Id.

Section 1927 sanctions are, understandably, not to "be
imposed lightly."  McCulloch v. Town of Milan, No. 07 Civ. 9780
(LAP), 2013 WL 4830934, at *2 (S.D.N.Y. Sept. 10, 2013) (Preska,
J.).  But "[a]n award under § 1927 is proper when the attorney's
actions are so completely without merit as to require the
conclusion that they must have been undertaken for some improper
purpose."  16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 264 (2d
Cir. 2015).  To that end, the Court "must find clear evidence
that (1) the offending party's claims were entirely meritless
and (2) the party acted for improper purposes."  Revson v.
Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000).

Moreover, "to impose sanctions under § 1927, the court must
make a finding of conduct constituting or akin to bad faith."
Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory,
Ltd., 682 F.3d 170, 178 (2d Cir. 2012) (per curiam) (quotation
marks omitted).  In assessing bad faith, "the court may consider
the manner in which the action was brought and the manner in
which i[t] was litigated.  Bad faith may be inferred when an
attorney engages in conduct that is so objectively unreasonable

10

that he necessarily must have been acting in bad faith."  Baker,
431 F. Supp. 2d at 362 (citation and quotation marks omitted).

## III. Discussion

The Court will address the summary judgment motion before
turning to the request for costs, attorney's fees, and
sanctions.

### a. Summary Judgment

This case boils down to a relatively straightforward
question of contract interpretation: Is MVP's use of the Photo a
"Permitted Use" under the iStock License?  Defendants say yes
because the incorporation of the Photo "on labels adhered to
[the] glass jars holding its 'Tropical Nectar' line of Colonial
Candle-brand candles . . . falls squarely within the plain and
unambiguous meaning of the term 'product packaging.'"  (Defs.
Br. at 8.)  Plaintiff counters with three points: (1) MVP used
the Photo as part of a "label," not "product packaging," which
the iStock License forbids, (see Pl. Br. at 9-13); (2) the
iStock License expressly forbids using the Photo as part of a
design mark, (see id. at 13); and (3) at the very least, the
iStock License is ambiguous such that summary judgment is
inappropriate, (see id. at 14-15).

Plaintiff's primary argument rests on Defendants'
description of MVP's use of the Photo on a "label."  Plaintiff
makes much out of that choice of nomenclature, leaning on a slew

of dictionary entries and the opinion of an unrelated advertising professional to show that a "label" is distinct from "product packaging."  (See id. at 10-13.)  Plaintiff describes the distinction as follows:  Packaging "is intended to be taken out of or off the physical product and not affixed to a product," whereas a label "is intended to be a part of the finished product and not to be taken off."  (Id. at 12.) Relying on that theory, Plaintiff avers that, because the iStock License does not contain the word "label," MVP's use of the Photo cannot be authorized unless the Court essentially "reconstruct[s] the contract."  (Id. at 11.)

That contention misses the forest for the trees.  When interpreting a contract, "words and phrases should be given their plain meaning," LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (ellipsis omitted), and "[i]t is common practice . . . to refer to the dictionary to determine the plain and ordinary meaning of words to a contract," Fed. Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 567 (2d Cir. 2011).  After consulting several, the Court finds that "packaging," in the commercial context, refers to "[t]he design of wrappers or containers for a product."[6]

---

[6] Packaging, OXFORD ENGLISH BUSINESS DICTIONARY (5th ed. 2009); see also Packaging, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/packaging (last visited Mar. 5, 2021)
(continued on following page)

Plaintiff's proposed dichotomy between "packaging" and "label" collapses for products, like this one, where the packaging is an important part of the finished product.[7]

What is the relevant packaging here?  The record provides only one answer: the glass jars containing the candles.[8]  And it is undisputed that MVP's labels incorporating the Photo are adhered to those jars.  In that sense, the labels function as a

_____

(continued from previous page)
(defining "packaging" as "material used to enclose or contain something" or "a covering wrapper or container"); Packaging, OXFORD ENGLISH DICTIONARY,  https://www.oed.com/view/Entry/ 239480?rskey=hRIG8l&result=2&isAdvanced=false#eid (last visited Mar. 5, 2021) (defining "packaging" as "[t]he materials used to wrap or protect an object, esp. a commercial product"); Packaging, AMERICAN HERITAGE DICTIONARY, https://www.ahdictionary.com/ word/search.html?q=packaging (last visited Mar. 5, 2021) (defining "packaging" as "[t]he manner in which something, such as a proposal or product . . . is presented to the public").

[7] As Plaintiff points out, for MVP's jar candles, "it [i]s Defendants' intent for consumers to burn the candle[s] whilst embedded in their respective glass jar[s]."  (Pl. 56.1 ¶ 53.)

[8] The pictures of MVP's candles that Plaintiff appended to his complaint confirm this.  (See Ex. C to Complaint ("Ex. C"), dated Nov. 14, 2016 [dkt. no. 1-3] (Colonial Candle website); Ex. D to Complaint ("Ex. D"), dated Nov. 14, 2016 [dkt. no. 1-4] (BB&B website); Ex. E to Complaint ("Ex. E"), dated Nov. 14, 2016 [dkt. no. 1-5] (Wayfair website); Ex. F to Complaint ("Ex. F"), dated Nov. 14, 2016 [dkt. no. 1-6] (Jet website).
The Complaint also cites other products besides MVP's jar candles, (see Complaint at ¶ 15), but the parties' briefing focuses primarily on the jar candles.  (See, e.g., Defs. Br. at 3; Pl. Br. at 5.)  The Court observes, however, that MVP uses the Photo directly on the packaging for the other products to which Plaintiff points.  (See Ex. C. at 5-9.)  It follows that if MVP's use of the Photo for the jar candles is permissible, its use of the Photo for the other products is also legitimate.

critical component of the product packaging, without which there would be nothing to identify the variety of candle inside.  To accept Plaintiff's argument would permit MVP to print the Photo directly on the jar but forbid MVP from adhering a label using the Photo to the jar, even though the label would serve the <u>same</u> function.  That cannot be, and indeed is not, what the iStock License requires.  The Court finds that the term "product packaging," as used in the iStock License, unambiguously permits MVP to incorporate the Photo onto a label that is a component of the product's packaging.[9]  That sounds the death knell for the copyright claim against MVP.  <u>See</u> <u>Graham</u>, 144 F.3d at 236.

Plaintiff's alternative theory that MVP is using the Photo as part of a "design mark" is meritless.  A "design mark" refers to a type of trademark protecting a particular visual design,

---

[9] Moreover, the Court observes that even if MVP's use of the Photo would not fit within the definition of "product packaging," Plaintiff still would not prevail.  "Product packaging" is, of course, not the only use that the iStock License sanctions.  The iStock License also authorizes MVP to use the Photo on "printed material," (<u>see</u> iStock License ¶ 3(c)(1)), which, as the photos appended to Plaintiff's complaint plainly show, would encompass MVP's use of the Photo on the labels for Colonial Candle's products.  (<u>See generally</u> Ex. C; Ex. D; Ex. E; Ex. F.)  The definition of "label" on which Plaintiff relies all but confirms that.  <u>See</u> <u>Label</u>, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/label (last visited Mar. 5, 2021) (defining "label" as, among other things, "written or printed matter accompanying an article to furnish identification or other information").

often a logo.[10]  MVP's use of the Photo simply does not fit that
definition.  By Plaintiff's own account, the Photo appears
"directly below the Colonial Candle logo" on the candles at
issue.  (Pl. Br. at 13.)  It is that logo, not the Photo, that
"identif[ies] and distinguish[es] [MVP's] goods . . . from those
manufactured or sold by others."  15 U.S.C. § 1127.  That
understanding is reinforced by the exhibits appended to the
Complaint, which show that Colonial Candle products of different
scents feature distinct photographs.  (See, e.g., Ex. E at 3-4.)
As a result, the Court concludes that the Photo is used as a
"decorative feature" on the candles' packaging, which the Patent
& Trademark Office indicates "does not function as a trademark."
TMEP § 1202.03 (Oct. 2018).

Plaintiff's claims against BB&B, Wayfair, and Jet likewise
go nowhere.  Liability for copyright infringement can be
established either directly or secondarily.  But "volitional
conduct is an important element of direct liability," Cartoon
Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d

---

[10] See, e.g., Juicy Couture, Inc. v. Bella Int'l Ltd., 930
F. Supp. 2d 489, 496 (S.D.N.Y. 2013) (detailing several logos
and referring to them as "design marks"); Merck & Co., Inc. v.
Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 407
(S.D.N.Y. 2006) (describing a design mark as a "stylized logo").
A design mark is distinct from a "word mark," which protects the
words themselves.  See, e.g., Vox Amplification Ltd. v.
Meussdorffer, No. CV 13-4922 (ADS) (GRB), 2014 WL 558866, at *6
(E.D.N.Y. Feb. 11, 2014) (distinguishing between design marks
and word marks).

Cir. 2008), and Plaintiff offers no meaningful argument as to how that standard is met for BB&B, Wayfair, and Jet.  To the contrary, nothing in the summary judgment records suggests that BB&B, Wayfair, and Jet--who only sold MVP's allegedly infringing products through their websites--"ha[d] a fundamental and deliberate role" in MVP's purported copying such that they morphed from "passive provider[s] of a space in which infringing activities happened to occur to [ ] active participant[s] in the process of copyright infringement."  Smith v. BarnesandNoble.com, LLC, 143 F. Supp. 3d 115, 123 (S.D.N.Y. 2015) (quotation marks omitted) (emphasis added).  Likewise, any theory of secondary liability, which must be premised on the "direct infringement" of a "relevant third party," necessarily fails.  Arista, 784 F. Supp. 2d at 423.  Because MVP did not directly infringe Plaintiff's copyright, BB&B, Wayfair, and Jet cannot be secondarily liable, whether contributorily or vicariously.  See Metro-Goldwyn-Mayer, 545 U.S. at 930.

### b. **Costs, Attorney's Fees, & Sanctions**

Defendants also seek an award of costs, fees, and sanctions against Plaintiff and his counsel, the Liebowitz Law Firm. Defendants aver that they are entitled to full costs and attorney's fees because Plaintiff commenced this action despite knowing that he had permitted iStock to license the Photo and continued to prosecute the case even after Defendants informed

him of the iStock License's existence.  (See Defs. Br. at 13-14.)  Plaintiff counters that awarding costs and fees, against either him or his counsel, is improper "because his claim has both factual and legal support" and Defendants have not "show[n] that Plaintiff's complaint is frivolous or motivated by an improper purpose."  (Pl. Br. at 17, 20.)

The Court agrees with Defendants:  An award of costs and attorney's fees is in order.  The most critical factor in determining whether to award costs under Section 505 of the Copyright Act is the objective unreasonableness of the losing party's conduct.  See, e.g., Baker, 431 F. Supp. 2d at 357.  Section 1927 requires more--counsel's conduct must be akin to bad faith.  See Star Mark, 682 F.3d at 178.  The Court finds that Plaintiff's and his counsel's conduct after September 20, 2018 satisfies both standards.  On that date, Defendants produced a copy of the iStock License.  (See Pl. 56.1 ¶ 22.)

The iStock License eviscerated Plaintiff's theory of the case, which was premised on MVP's copying of the Photo from FineArtsAmerica.com.  (See Complaint ¶ 14.)  At that point, even if Plaintiff somehow forgot that he allowed iStock to license the Photo, the iStock License put him on notice of where MVP obtained the Photo.  Likewise, by the time Defendants produced the iStock License, Plaintiff's counsel had already acknowledged that "[t]he existence of a license that allegedly cover[ed] the

17

infringing use would be dispositive."  (Id. ¶ 19.)  Yet, neither
Plaintiff nor his counsel sought leave to amend the complaint or
served any discovery requests.  Instead, over the course of
nearly two years, Plaintiff and his counsel repeatedly refused
to dismiss this action, choosing instead to shift gears and
advance an entirely different theory of the case that was
completely divorced from the pleadings.  And, as explained
above, Plaintiff's new position was meritless.  Consequently,
the Court is left to conclude that Plaintiff's and his counsel's
actions were objectively unreasonable and akin to bad faith.

Another factor supports awarding costs and fees in this
case: deterrence.  See Fogerty, 510 U.S. at 534 n.19.  A recent
order issued by Judge Furman--which Mr. Liebowitz and his firm
were required to file to the public docket in this action[11]--
makes plain that this is not counsel's first rodeo.  See
Usherson v. Bandshell Artist Mgmt., No. 19-CV-6368 (JMF), 2020
WL 3483661, at *1 (S.D.N.Y. June 26, 2020).  To the contrary,
Plaintiff's counsel, having filed more than 1,200 copyright
cases in this district alone over the last four years, is
intimately familiar with the law in this area.[12]  Given those

---

[11] (See Notice of Order, dated July 27, 2020 [dkt. no. 53].)

[12] See Usherson, 2020 WL 3483661, at *1 ("Richard Liebowitz,
who passed the bar in 2015, started filing copyright cases in
this District in 2017.  Since that time, he has filed more cases
                              (continued on following page)

facts, "an award of costs and fees is crucial here" to deter
counsel "from bringing unreasonable claims based on a
cost/benefit analysis that . . . they can score big if they win
and that there will be no adverse consequences if they lose."
Baker, 431 F. Supp. 2d at 359.

In sum, the Court finds Plaintiff's and his counsel's
continued prosecution of this action after Defendants produced
the iStock License to be objectively unreasonable and tantamount
to bad faith.  Accordingly, an award of costs and attorney's
fees is appropriate (1) against Plaintiff under Section 505 of
the Copyright Act and (2) against the Liebowitz Law Firm under
28 U.S.C. § 1927.  Defendants are entitled to their costs and
fees incurred after September 20, 2018, and Plaintiff and the
Liebowitz Law Firm shall be jointly and severally liable for
those costs and fees.  The Court declines at this time, however,
to fix the amount of such costs.  An application for costs and
"attorney's fees must be supported by accurate, detailed, and
contemporaneous time records."  Verch v. Sea Breeze Syrups,
Inc., No. 19-CV-5923 (RPK) (RML), 2020 WL 7407939, at *4
(E.D.N.Y. Aug. 20, 2020) (quotation marks omitted).  Because

---

(continued from previous page)
in this District than any other lawyer: at last count, about
1,280; he has filed approximately the same number in other
districts.").

Defendants submitted no such evidence with their moving papers,[13] the Court cannot, as it must, evaluate the reasonableness of the rates charged, the time spent, or the costs incurred.

**IV.   Conclusion**

For the foregoing reasons and to the extent described above, Defendants' motion for summary judgment as well as costs, attorney's fees, and sanctions [dkt. no. 46] is GRANTED.  The parties shall confer with an eye towards resolving the matter of the amount of costs and attorney's fees.  If the parties cannot resolve the issue, they shall propose a schedule by letter for the Court to resolve the matter.  Any such schedule shall be submitted no later than March 12, 2021.  The Clerk of the Court shall close the open motion.

**SO ORDERED.**

Dated:     March 5, 2021
           New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge

---

[13] Defendants proffered only two statements outlining the total amounts Defendants incurred for costs and attorney fees. (See McGuire Decl. ¶ 12; Tajika Decl. ¶ 2.)